FAUBUS, CHAIRMAN *v.* MILES.

5-3319                                              377 S. W. 2d 601

Opinion delivered April 13, 1964.

[Rehearing denied May 4, 1964.]

*Bruce Bennett,* Attorney General, By *Jack L. Lessenberry,* Asst. Attorney General, for appellant.

*C. B. Nance, Jr.,* for appellee.

PAUL WARD, Associate Justice. The subject of this litigation is the constitutionality of Act 19 of the First Extraordinary Session of the Sixty-Fourth General Assembly. Said Act 19 purports to accomplish two major objectives: one is to establish a system of voter registration and the other is to abolish the poll tax as a prerequisite to vote in any election.

Shortly after Act 19 was passed (with an emergency clause) and signed by the governor, a citizen and taxpayer (representing the citizens and taxpayers of the state) brought suit against the governor as Ex Officio Chairman of the State Board of Election Commissioners, the Chairman of the State Democratic Committee, and the Chairman of the Pulaski County Democratic Central Committee (representing .all officials charged with the responsibility of conducting elections), for a declaratory judgment under the authority of Ark. Stat. Ann. § 34-2501, et seq. (Repl. 1962).

In the petition it was in essence alleged (among other things): Act 19 provides that a citizen, otherwise qualified, "may vote for candidates seeking nominations of a political party for state, district, county, township, and municipal offices in party primaries and seeking election to offices in general elections, *without paying for or possessing a poll tax*"; that such provision is contrary to the constitution; that the defendants will permit said unconstitutional act to be put in operation in a short time; and, that the time in which to enjoin the de-

fendants is of the essence. Petitioner's prayer was that the defendants be enjoined from:

"a. Permitting any person to qualify as a candidate in either a primary or general election for a State office or the office of any political subdivision of the State if such person has not paid his poll tax or does not exhibit a poll tax or evidence that he has paid his poll tax as required by the Constitution and statutes of the State of Arkansas.

"b. Permitting any person to cast a ballot in either a primary or general election for a candidate for a State office or the office of any political subdivision of the State if such person has not paid his poll tax or does not exhibit a poll tax receipt or other evidence that he has paid his poll tax as required by the Constitution and statutes of the State of Arkansas.

"c. Certifying as a nominee for any political party any candidate for a State office of any political subdivision thereof any person who has not paid a poll tax as required by the Constitution and statutes of the State of Arkansas.

"d. Placing on the official ballot for the general election a nominee or person unless he has paid the poll tax required by the Constitution and statutes of the State of Arkansas.

"e. Permitting any person to cast a ballot on any issue or proposition other than a candidate if such person has not paid his poll tax or does not exhibit evidence of payment of his poll tax as required by the Constitution and statutes of Arkansas."

In addition to the above, petitioner prayed that Act 19 be declared unconstitutional insofar as it seeks to permit a person (otherwise qualified as an elector) to be a candidate or to cast a ballot in any election other than for the positions or offices set out in Amendment 24 of the Constitution of the United States.

To the above complaint defendants demurred on the ground that it did not state allegations sufficient to con-

stitute a cause of action. Defendants also answered, denying Act 19 is unconstitutional in any part, but asserting it is authorized by Amendment 39 to the Constitution of Arkansas. The prayer was that the complaint be dismissed and that Act 19 be declared constitutional.

The issues posed by the foregoing pleadings were presented to the chancery court. Whereupon the court, after making certain findings of fact, entered a Declaratory Judgment (in essence and substance) as follows:

(1) The defendant's demurrer is overruled.

(2) Act 19 is constitutional insofar as it provides for voter registration and voting for those officials enumerated in Amendment 24 to the U. S. Constitution, but it is unconstitutional in all respects insofar as it seeks to permit a person to vote for a state, district, county, township or municipal office or on a state or local issue without having paid for a poll tax.

(3) The defendants (appellants here) are enjoined from doing any of the things mentioned in the prayer of the complaint as heretofore set out.

On appeal from the above Declaratory Judgment, appellants urge a reversal in part, relying on the grounds hereafter discussed. We acknowledge appreciation of the Amici Curiae brief presented by the Arkansas League of Women Voters and the Arkansas State AFL-CIO.

*The Issue Defined.* The basic issue presented for our decision, briefly stated, is whether Amendment 39 to the State Constitution gives the legislature the power to dispense with the payment of a poll tax as a prerequisite for voting. It is apparently conceded by all parties (as was held by the trial court) that a poll tax is no longer a prerequisite to voting in a primary or general election for persons running for federal offices (i.e., offices mentioned in Amendment 24 to the U. S. Constitution). The basic issue above mentioned is therefore limited in this opinion to the poll tax as a prerequisite to voting for persons running (in a primary, gener-

al, or special election) for a state, district, county, township or municipal office, or voting on a state or local issue, or in a school election. All such offices, officers, or issues shall hereafter (for brevity) be referred to as state (as opposed to federal) offices, officers, or issues.

It is our opinion that said Amendment 39 does not give the legislature the power to dispense with the poll tax as a prerequisite for voting in state elections (as previously limited and defined). In order to make clear the reasons for our opinion, we set out below a brief resume of the pertinent portions of our constitution.

(a) Section 1 of Article 3 of the Constitution (as amended in 1920 by Amendment 8) provides: that every citizen 21 years old who has resided in the state 12 months, in the county 6 months, and in the voting precinct 1 month (with certain exceptions) and who *has paid a poll tax,* shall be allowed to vote. (*Jones* v. *Floyd,* 129 Ark. 185, 195 S. W. 360, interprets this amendment to mean a poll tax is a prerequisite to voting.)

(b) Amendment 11 (adopted in 1926) requires every male citizen over 21 years of age to *pay* an annual per capita tax of $1.00 for school purposes.

(c) Section 2, Article 3 of the Constitution provides that the *right to vote* shall not be made to *"depend upon any previous registration of the elector's name . . ."* (Emphasis added.)

(d) Amendment 39 (adopted in 1948) which is being interpreted here, gives the legislature power to do two things: One is to "enact laws providing for a registration of voters"; and the other is "to require that the right to vote . . . shall depend upon such previous registration".

Three obvious conclusions are readily deducible from the above constitutional provisions. *One,* that previous to the adoption of Amendment 39 the legislature had no power to pass a "registration" law (due to Section 2, Article 3). *Two,* that the legislature did have the power (by virtue of Amendment 39) to pass a "registra-

tion" law. *Three,* that the legislature had the power (by virtue of Amendment 39) to make "registration" a prerequisite to voting in any election. We are therefore driven to the conclusion that insofar as Act 19 requires compliance with *Two* and *Three* just mentioned, it is constitutional.

We are convinced, however, that the people, in adopting Amendment 39, did not intend to do away with the necessity of paying a poll tax in order to vote. Perhaps the most obvious and the most forceful reason (why the people did not so intend) is that if they so meant, they would have so stated—it would have been easy to do so.

In addition to the above, there are other forceful reasons why we think Amendment 39 did not do away with the necessity of a poll tax in order to vote. The payment of a poll tax is only one of several qualifications of an elector required by Amendment 8 as heretofore pointed out. If Amendment 39 gives the legislature power to abolish the poll tax (as a prerequisite to voting then it would seem to follow also that the legislature could change or abolish the qualifications pertaining to age and residence. Such an interpretation amounts to holding Amendment 39 repeals Amendment 8 by implication. Repeal by implication is not favored, and the legal presumption is against such repeal. These rules of construction are well established and they apply with equal force to statutes and constitutional amendments. See: *Polk* v. *Corning School District No. 8 of Clay County,* 202 Ark. 1094, 155 S. W. 2d 342, and *Shepherd* v. *Little Rock,* 183 Ark. 244, 35 S. W. 2d 361.

We find no merit whatever in the argument advanced by appellants that Amendment 24 to the Constitution of the United States abolishes the poll tax as a prerequisite to voting in state elections (as previously herein defined). Said amendment, in material parts, reads:

"The right of citizens of the United States to vote in any primary or other election for President or Vice

President, for electors for President or Vice President, or for Senator or Representative, in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." It is abundantly clear from the above quoted language that said Amendment 24 has nothing to do with state elections (as previously herein defined).

Section 14 of Act 19 sets up a temporary system of registration "applicable to all elections held in this State after the 1st day of June, 1964, and before the 1st day of July, 1965". We reiterate that the legislature has the power to require a persons to "register" before he can vote (in any election) even though such person has paid for a poll tax in due time as provided by law. We call attention, however, to certain provisions of the section which purport to substitute a "free" poll tax (for registration purposes) in lieu of a poll tax for which the voter has paid $1.00 (in due time as provided by law). It is our conclusion that the legislature has no power, in state elections (as heretofore defined), to substitute said "free" poll tax (for registration purposes) in lieu of a poll tax for which the voter has paid $1.00 (in due time as provided by law). It is our conclusion that the legislature has no power, in state elections (as heretofore defined), to substitute said "free" poll tax for the poll tax required by Amendment 8 which provides that the voters "shall exhibit a poll tax receipt or other evidence that they have *paid* their poll tax . . ." (Emphasis added.) To hold otherwise would be to approve a subterfuge for evading the letter and the spirit of a plain constitutional provision. The Constitution (Amendment 40) directs that the money raised from the payment of poll taxes shall go to support the public schools. This important source of revenue for a worthy purpose, in our opinion, is entitled to protection by the courts until the people (by amendment) direct otherwise.

With the clarificaions herein mentioned, the judgment of the trial court is affirmed.

Affirmed (as clarified).

JOHNSON, J., concurs.

964

JIM JOHNSON, Associate Justice (concurring). I agree with the majority opinion wherein it is determined that Amendment 39 to the Constitution of the State of Arkansas and Amendment 24 to the Constitution of the United States in no way repeal Amendment 8 to the Constitution of the State of Arkansas. This determination, of course, renders void that portion of Act 19 of the First Extraordinary Session of the Sixty-fourth General Assembly which sought to abolish the poll tax as a requisite to vote in state elections. I concur in this separate opinion for the reason that it is my view that, while this declaratory judgment action was confined to the narrow issues discussed in the majority opinion, in the public interest the Court should have further discussed the remaining portions of Act 19 which immediately affect the right of citizens of this state to vote.

First, I feel that it should be pointed out that the valid portions of Act 19 do not radically change the law as it existed prior to the passage of Act 19. Every person who possesses a valid paid 1963 poll tax receipt, and who is otherwise qualified under existing law, can still vote for candidates for federal office until October 1. 1964 as was true under the old law. The new law simply goes further and provides that those persons who failed to qualify by purchase of a 1963 poll tax will be permitted to vote, if they otherwise qualitfy, simply by registering with the county collector during the last 20 days of April of 1964. These registrants will be issued a so-called "free" poll tax receipt which will permit them to vote for candidates for federal office until October 1. As things now stand, the holders of current paid poll tax and "free" poll tax receipts, by virtue of the valid portions of Act 19, will be permitted to vote for candidates for federal office in the summer primaries of 1964. Only those holders of a valid *paid* poll tax receipt will be permitted to vote for candidates for state and subdivision offices.

I feel that it is necessary now to project the effect of the holding of the Court beyond the summer primaries. Here again the law has not been materially

changed for those who pay the poll tax prior to October 1, 1964. By virtue of the valid portions of Act 19, those who hold a valid *paid* poll tax receipt issued prior to October 1, 1964, will be considered properly registered for all purposes until July 1, 1965. That is, such registrants, if otherwise qualified, will be permitted to vote in the November, 1964, general election for candidates for state and federal office. Those registrants who hold only the "free" poll tax receipts will be permitted to vote, if otherwise qualified, for candidates for federal office only, provided they register again during the last 20 days of September, 1964, and such registration will be valid for that limited purpose until July 1, 1965.

In order to be registered beyond July 1, 1965, both the holders of paid poll tax receipts and those who have not paid a poll tax must register with the county collector at any time during the period between January 1, 1965 and April 10, 1965. The holders of valid paid poll tax receipts will continue to enjoy the privileges of voting in all state and federal elections. All others who register will be limited to the privileges of voting for candidates for federal office only.

My second reason for concurring by means of a separate opinion is that I feel that the Court should have pointed out that the net effect of the majority holding, in which I am in complete agreement, is that the people alone have the power to alter the basic difficulty presented by the adoption of Amendment 24 to the Constitution of the United States. Until the voice of the people of Arkansas is heard by the repeal of the portion of the Constitution of the State of Arkansas requiring the payment of a poll tax as a requisite to voting, this state will be faced with a dual registration system and dual balloting as a resulting necessity.