# SUPREME COURT OF ARKANSAS

No. CV–14–462

|  |  |
|---|---|
| MARK MARTIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF ARKANSAS AND HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE ARKANSAS STATE BOARD OF ELECTION COMMISSIONERS; RHONDA COLE; C.S. WALKER; JAMES HARMON SMITH III; STUART SOFFER; BARBARA MCBRYDE; AND CHAD PEKRON, IN THEIR OFFICIAL CAPACITIES AS COMMISSIONERS OF THE ARKANSAS STATE BOARD OF ELECTION COMMISSIONERS<br><br>APPELLANTS<br><br>V.<br><br>FREEDOM KOHLS; TOYLANDA SMITH; JOE FLAKES; AND BARRY HAAS<br><br>APPELLEES | **Opinion Delivered** October 15, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-14-1495]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED. |

**DONALD L. CORBIN, Associate Justice**

Appellants, Mark Martin, in his official capacity as Secretary of State for the State of

Arkansas and his official capacity as Chairman of the Arkansas State Board of Election

Commissioners ("Martin"), and Rhonda Cole; C.S. Walker; James Harmon Smith III; Stuart

Soffer; Barbara McBryde; and Chad Pekron ("Appellants"), in their official capacities as

Commissioners of the Arkansas State Board of Election Commissioners, appeal an order of

the Pulaski County Circuit Court declaring Act 595 of 2013 ("Act 595") unconstitutional, enjoining and restraining from enforcing the proof-of-identity provisions of Act 595 and the rules promulgated as a result of Act 595, and granting a preliminary injunction against Appellants from enforcing Act 595's proof-of-identity requirements in favor of Appellees Freedom Kohls, Toylanda Smith, Joe Flakes, and Barry Haas, who are registered voters in Pulaski County. For reversal, Martin makes five allegations of error, including three arguments that the circuit court abused its discretion in granting the preliminary injunction. Appellants also assert that the circuit court's issuance of the preliminary injunction was an abuse of discretion. Pursuant to Arkansas Supreme Court Rule 1–2(a)(1) (2014), we have jurisdiction of this appeal, as it involves the interpretation and construction of the Arkansas Constitution. We affirm the circuit court's ruling that Act 595 is unconstitutional on its face.

I. *Facts*

On March 19, 2013, both houses of the Arkansas General Assembly passed Act 595, which required Arkansas residents to provide "proof of identity" when voting at the polls. Act 595 is entitled, "AN ACT TO REQUIRE THAT A VOTER PROVIDE PROOF OF IDENTITY WHEN VOTING; TO PROVIDE FOR THE ISSUANCE OF A VOTER IDENTIFICATION CARD; AND FOR OTHER PURPOSES." Specifically, section 1 of Act 595 requires proof of identity in the form of a voter-identification card or a document or identification card showing the voter's name and photo issued by the United States, the State of Arkansas, or an accredited postsecondary educational institution in Arkansas with an expiration date. Section 1 of Act 595 provides a list of such acceptable documentation.

Governor Beebe, in a letter dated March 25, 2013, questioned the constitutionality of the Act and informed the Arkansas Senate that he had vetoed Act 595 because it was "an expensive solution in search of a problem" and was "an unnecessary measure that would negatively impact one of our most precious rights as citizens." On March 27, 2013, the Arkansas Senate overrode the governor's veto. The Arkansas House of Representatives later overrode the veto on April 1, 2013.

On April 16, 2014, Appellees filed a complaint for injunctive and declaratory relief pursuant to the Arkansas Declaratory Judgment Act, specifically Arkansas Code Annotated sections 16-111-102 to -104 (Repl. 2006), challenging sections of Act 595 passed by the Arkansas General Assembly that allegedly placed an additional qualification and impairment on Arkansas residents before they could exercise their state constitutional right to vote. In the complaint, Appellees alleged that "unwarranted and unconstitutional provisions of Act 595 violate Article 3, Section 1, and Article 3, Section 2, of the Arkansas Constitution." Specifically, Appellees claimed that Act 595 (1) added a new and unconstitutional qualification to the right to vote in violation of article 3, section 1, of the Arkansas Constitution and (2) impaired the right to vote in violation of article 3, section 2, of the Arkansas Constitution. In their prayer for relief, Appellees sought a declaration that Act 595's proof-of-identity requirement was unconstitutional and invalid under the Arkansas Constitution; that the circuit court award Appellees all relief allowed by law and equity, including but not limited to declaratory, preliminary, and permanent injunctive relief; that the circuit court award attorneys' fees and costs; and any other relief.

On April 22, 2014, Appellees filed a motion for preliminary injunction requesting the court to enjoin Appellants from enforcing Act 595's proof-of-identity requirements in the May 2014 primary election. In response to Appellees' motion for preliminary injunction, Martin argued that Appellees had not demonstrated standing to bring a facial challenge to Act 595; that Appellees failed to cite a statutory basis for injunctive relief; that, to the extent that Appellees sought relief other than declaratory judgment, the suit was barred by sovereign immunity; that Appellees could not prove that failure to issue a preliminary injunction would result in irreparable harm; and that Appellees were unlikely to succeed on the merits of the complaint. Appellants responded, claiming that Appellees did not meet the requirements for a preliminary injunction and that they had sovereign immunity to Appellees' requests for any relief other than a declaratory judgment.

The circuit court held a hearing on Appellees' motion for preliminary injunction on May 2, 2014. There, the parties limited their presentation solely to a facial challenge of the proof-of-identity provisions of Act 595. On May 23, 2014, the circuit court entered its order finding that Appellees were registered voters in Pulaski County who had standing to make the facial challenge. The circuit court overruled and denied Martin's objections that sovereign immunity precluded entry of a preliminary injunction and that necessary parties were missing from the lawsuit on the pleadings. The circuit court specifically ruled on the constitutional arguments as follows:

> The "proof of identity" documentation required to be provided by each voter under Act 595 constitutes an additional qualification necessary to vote, in violation of Article 3, Section 1 of the Arkansas Constitution, and [Appellants] are hereby enjoined and

4

restrained from enforcing the "proof of identity" provisions contained in Act 595 for its facial unconstitutionality on that basis. [Appellants] are enjoined from enforcing their rules promulgated as a result of Act 595 that specifically require election officials to require voters to produce "proof of identity" prior to casting a ballot either during early voting or on election day.

The circuit court concluded that Appellees had made a requisite showing of irreparable harm and a likelihood of success on the merits "given the facial unconstitutionality of the 'proof of identity' provisions contained in Act 595" and granted preliminary injunctive relief pursuant to Arkansas Rule of Civil Procedure 65. The circuit court temporarily enjoined and restrained Appellants from enforcing any proof-of-identity provisions of Act 595 and from enforcing their rules promulgated as a result of Act 595 either during early voting or on election day in May 2014. Further, the circuit court on its own motion stayed the preliminary injunction pending an action by this court in *Arkansas State Board of Election Commissioners v. Pulaski County Election Commission*, 2014 Ark. 236, 437 S.W.3d 80 (subsequently vacating the circuit court's grant of summary judgment because Act 595's constitutionality was neither raised nor developed by the parties at the circuit-court level and dissolving the temporary stay). Appellants timely filed a notice of appeal of the circuit court's order granting a preliminary injunction.

## II. *Points on Appeal*

On appeal, Martin argues that Appellees lacked standing to bring a facial challenge to the constitutionality of Act 595; that the circuit court lacked jurisdiction to enter a preliminary injunction, which was barred by sovereign immunity; that the circuit court abused its discretion in granting the preliminary injunction; that the circuit court's order

violates Arkansas Rule of Civil Procedure 65 (2014); and that Appellees failed to join necessary parties. Appellants assert that the circuit court abused its discretion in issuing the preliminary injunction because Appellees did not demonstrate that they were likely to succeed on the merits.

At the outset, we emphasize a procedural anomaly in this case. From the bench and in its order, the circuit court granted Appellees' motion for preliminary injunction after analyzing the two factors of irreparable harm and a likelihood of success on the merits, but then proceeded to grant declaratory and injunctive relief based on the facial challenge to Act 595, which Appellees presented in count one of their complaint.[1] In doing so, the circuit

---

[1] The circuit court's written order incorporates by reference its bench ruling that "the information required under Act 595 constitutes an additional qualification" and that "595 is unconstitutional in that it adds that qualification." Afterward, separate Appellants' counsel asked the circuit court for clarification as follows:

> [ATTORNEY GENERAL]: I'm trying to figure out the Court's ruling within the procedural framework –
>
> THE COURT: It's unconstitutional, but I'm staying it so that –
>
> [ATTORNEY GENERALl: Yeah. I understand –
>
> THE COURT: Okay.
>
> [ATTORNEY GENERAL]: I understand that. I just – I guess in my mind we're here for a preliminary injunction proceeding. But you've made, as a matter of law, that's the decision.
>
> THE COURT: I'm granting the injunctive relief.
>
> [ATTORNEY GENERAL]: Right.

court ruled that Act 595 was unconstitutional on its face because it placed additional

qualifications on Arkansas voters by requiring that they provide a proof of identity before

exercising their right to vote, in violation of article 3, section 1, of the Arkansas Constitution.

On appeal, however, the parties' arguments focus entirely on the circuit court's granting the

preliminary injunction and do not address the circuit court's ruling on the merits that Act 595

is facially invalid with its added proof-of-identity voting requirement. Thus, to the extent

that the parties present their arguments in terms of the likelihood of success on the merits, we

treat those arguments as addressing the merits of the facial challenge to Act 595.[2]

---

> THE COURT: I'm declaring [Act 595] to be unconstitutional and granting the injunctive relief that it's not be enforced, but I'm staying my decision. Will that do it?
>
> [ATTORNEY GENERAL]: But you have not – this was not a trial on the merits; this was only strictly a preliminary injunction hearing, correct?
>
> THE COURT: It was a challenge to the – a facial challenge.

Following a conference off-record, Appellants' counsel did not make any objection to the circuit court's ruling that Act 595 was facially invalid.

[2] We conclude that any arguments concerning Appellees' motion for preliminary injunction are now moot for two distinct reasons. First, the preliminary injunction is rendered moot because of the circuit court's final resolution of the constitutional question. *See, e.g., S. Coll. of Naturopathy v. State ex rel. Beebe*, 360 Ark. 543, 203 S.W.3d 111 (2005); *Galloway v. Ark. State Hwy. & Transp. Dep't*, 318 Ark. 303, 885 S.W.2d 17 (1994). Second, in their motion for preliminary injunction, Appellees stated as follows:

> Pursuant to Rule 65 of the Arkansas Rules of Civil Procedure, [Appellees] seek a preliminary injunction against the [Appellants] from enforcing the new "proof of identity" requirements contained in Act 595 in order that the [Appellees], and all other similarly situated qualified Arkansas residents *may cast valid ballots at the upcoming May election*.

A. Standing

First, we address Martin's argument that the circuit court did not have subject–matter jurisdiction because Appellees lacked standing to challenge the constitutionality of Act 595. Specifically, Martin asserts that Appellees have offered no proof that they suffered an injury or harm as a result of the proof–of–identity provisions of Act 595. In response, Appellees contend that they only had to prove that they were registered voters to which Appellants stipulated at the hearing and that the stipulation established standing.

The general rule is that one must have suffered injury or belong to that class that is prejudiced in order to have standing to challenge the constitutional validity of a law. *Stokes v. Stokes*, 271 Ark. 300, 613 S.W.2d 372 (1981). Stated differently, plaintiffs must show that the questioned act has a prejudicial impact on them. *Tauber v. State*, 324 Ark. 47, 919 S.W.2d 196 (1996); *Garrigus v. State*, 321 Ark. 222, 901 S.W.2d 12 (1995).

In the instant case, Appellees needed only to prove that their rights were affected by Act 595 in a declaratory–judgment action challenging the validity of Act 595. As registered voters, Appellees were only required to demonstrate that they were among the class of persons affected by the legislation. *See Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002). Here, we agree with the circuit court's ruling that Appellees had standing, as the parties stipulated

---

(Emphasis added.) Here, Appellees' motion for preliminary injunction concerned only the May 2014 election and did not include the upcoming November 2014 election. Because Arkansas's 2014 May primary election is long past, we conclude that any preliminary injunctive relief is moot. *See, e.g.*, *Judd v. Martin*, 2013 Ark. 136. Further, we conclude that the mootness exceptions do not apply in this instance, as we now reach the merits of the parties' arguments regarding the constitutionality of Act 595.

to, and the circuit court found, that Appellees were registered voters in Pulaski County subject to the proof-of-identity requirement in Act 595. Thus, we hold that, because of their status as registered voters in Arkansas, Appellees have established standing in the instant case.

## B. Necessary Parties

Martin also argues that Appellees, by failing to name the county clerks and county election commissioners, failed to name all the necessary parties for the circuit court to grant declaratory relief. Martin contends that, pursuant to the declaratory-judgment statute found at Arkansas Code Annotated section 16-111-106 (Repl. 2006), all persons who have or claim an interest must be made parties, and that Appellees did not join the necessary parties. In response, Appellees assert that their complaint sufficiently identifies the State's chief election official, Secretary of State Mark Martin, and the Arkansas State Board of Election Commissioners.

Pursuant to Arkansas Code Annotated section 7-4-101(f)(2) (Supp. 2013), the State Board of Election Commissioners has the authority to "[c]onduct statewide training for election officers and county election commissioners." In this instance, Appellees properly named the necessary parties, Secretary of State Mark Martin and the individual Arkansas State Board of Election Commissioners, who, in their positions of authority, train and direct the county clerks and the county election commissioners across this state. Accordingly, we hold that the circuit court properly denied Martin's objections that necessary parties are missing from the lawsuit on the pleadings.

C. Facial Challenge to Act 595

We now consider the parties' facial–challenge arguments presented to this court. On appeal, Martin argues that Act 595 is presumed to be constitutional. Relying on *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), Martin asserts that checking a photo-identification card is not a new qualification to vote, but a method of "identifying eligible voters at the polls." *Crawford*, 553 U.S. at 197. Appellants assert that the circuit court erred because Appellees did not demonstrate that the proof-of-identity requirements add an additional qualification for becoming a registered voter. Appellants maintain that the proof-of-identity requirement is not a qualification but rather a procedural requirement that ensures that people who cast their votes are qualified to do so. Appellants claim that this requirement assures the public that the person is "[l]awfully registered to vote in the election." Ark. Const. art. 3, § 1(4) (Supp. 2013).

Appellees respond that the circuit court properly determined that Act 595 was unconstitutional, as this court's case law is clear that the Arkansas Constitution "fiercely protects against the [Arkansas] General Assembly's interference with Article 3 of the Arkansas Constitution." Appellees further emphasize that a proof of identity is required in an Arkansas resident's voter-registration process, which is governed by Amendment 51 of the Arkansas Constitution, and is not required for an individual's vote in an Arkansas election. Four amicus briefs support Appellees' argument.

Our standard of review of a circuit court's ruling on the constitutionality of an act is clear. This court reviews a circuit court's interpretation of the constitution de novo because

it is for this court to determine what a constitutional provision means. *Chandler v. Martin ex rel. State*, 2014 Ark. 219, 433 S.W.3d 884. Although this court is not bound by the circuit court's decision, its interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *Miller v. Ark. Dep't of Finance & Admin.*, 2012 Ark. 165, 401 S.W.3d 466.

Appellees challenged Act 595 as unconstitutional on its face, not as-applied to a specific party or circumstance. Acts of the legislature are presumed constitutional and the party challenging the statute has the burden to prove otherwise. *Archer v. Sigma Tau Gamma Alpha Epsilon, Inc.*, 2010 Ark. 8, 362 S.W.3d 303. An act will be struck down only when there is a clear incompatibility between the act and the constitution. *Tsann Kuen Enters. Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003). A facial invalidation of a statute is appropriate if it can be shown that "under *no* circumstances can the [Act] be constitutionally applied." *Linder v. Linder*, 348 Ark. 322, 349, 72 S.W.3d 841, 856 (2002) (emphasis in original). Under this constitutional standard applicable to facial challenges, the proponent must establish that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Nevertheless, despite this heavy burden, the United States Supreme Court continues to recognize the validity of facial challenges under the appropriate circumstances. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008).

The key issue is whether Act 595 imposes upon an Arkansas voter an additional qualification beyond those voter qualifications set forth in the Arkansas Constitution. Section 1 of article 3 of the Arkansas Constitution provides as follows:

Except as otherwise provided by this Constitution, any person may vote in an election in this state who is:

(1) A citizen of the United States;

(2) A resident of the State of Arkansas;

(3) At least eighteen (18) years of age; and

(4) Lawfully registered to vote in the election. [As amended by Const. Amend. 85.]

Ark. Const. art. 3, § 1 (Supp. 2013).

Act 595, as enacted, states that "any person desiring to vote in this state shall . . . [p]resent proof of identity to the election official when appearing to vote in person either early or at the polls on election day." Ark. Code Ann. § 7-5-201(d)(1)(A) (Supp. 2013). Specifically, section 1 of Act 595 provides the definition of "proof of identity" as follows:

(i) A voter identification card under § 7-5-322; or

(ii) A document or identification card that:

(a) Shows the name of the person to whom the document was issued;

(b) Shows a photograph of the person to whom the document was issued;

(c) Is issued by the United States, the State of Arkansas, or an accredited postsecondary educational institution in the State of Arkansas; and

(d) If displaying an expiration date:

(1) Is not expired; or

(2) Expired no more than four (4) years before the date of the election in which the person seeks to vote.

Further, section 1 lists acceptable documentation, which includes, inter alia, such items as a driver's license, photo-identification card, and a United States passport, that satisfy the proof-of-identity requirement.

For approximately 150 years, this court has remained steadfast in its adherence to the strict interpretation of the requisite voter qualifications articulated in the Arkansas Constitution. In *Rison v. Farr*, 24 Ark. 161 (1865), Farr's ballot was refused when he declined to subscribe to a statutory oath that he would support the Constitution of the United States and the Constitution of Arkansas; that he had not voluntarily borne arms against the United States or Arkansas; and that he had not aided, directly or indirectly, the Confederate authorities since April 18, 1864. We rejected this requirement, holding that, as a prerequisite to voting, the statutory oath prescribed by the Arkansas General Assembly was in direct conflict with the Arkansas Constitution. We stated as follows:

> [A]lthough this part of the law is professedly enacted, "TO PROVIDE THE MANNER OF HOLDING ELECTIONS," it is, in effect, nothing but a prohibition upon the right to vote as secured by the constitution; and is of the same import as an affirmative provision that no person who has voluntarily borne arms against the United States, or this state, or aided the so-called confederate authorities, since the 18th day of April, 1864, shall be allowed to vote at any election in the state of Arkansas. And to admit that the legislature may do this, would be to declare that part of the constitution which defines the qualifications of a voter, absolutely nugatory, and would turn section 2 of article IV [a precursor to voter qualifications], of our constitution into the merest nonsense. And clearly, if the legislature cannot, by direct legislation, prohibit those who possess the constitutional qualification to vote, from exercising the elective franchise, that end cannot be accomplished by indirect legislation. The legislature cannot, under color of regulating the manner of holding elections, which to some extent that body has a right to do, impose such restrictions as will have the effect to take away the right to vote as secured by the constitution.

*Rison*, 24 Ark. at 172.

13

This proposition was reaffirmed years later in *Faubus v. Miles*, 237 Ark. 957, 377 S.W.2d 601 (1964). In *Faubus*, the Arkansas General Assembly passed legislation to establish a system of voter registration "purport[ing] to substitute a 'free' poll tax (for registration purposes) in lieu of a poll tax for which the voter has paid $1.00." *Id*. at 963, 377 S.W.2d at 604. A citizen and taxpayer filed suit challenging the constitutionality of the act, and the chancellor declared the act unconstitutional. On appeal, this court held as follows:

> It is our conclusion that the legislature has no power, in state elections . . . to substitute said "free" poll tax for the poll tax required by Amendment 8 which provides that the voters "shall exhibit a poll tax receipt or other evidence that they have *paid* their poll tax. . . ." (Emphasis added.) To hold otherwise would be to approve a subterfuge for evading the letter and the spirit of a plain constitutional provision.

*Id*. at 963, 377 S.W.2d at 604.

Applying our well-established precedent to the present case, Act 595 cannot survive a constitutional facial challenge. Here, the Arkansas General Assembly's passage of Act 595 requires an Arkansas voter to provide a "voter identification card," pursuant to Arkansas Code Annotated section 7-5-322, or "[a] document or identification card." However, Act 595's added requirement of providing a proof of identity as a prerequisite to voting runs afoul of article 3, section 1, of the Arkansas Constitution. Section 1 of article 3 plainly states that any person may vote in an election who is (1) a U.S. citizen, (2) an Arkansas resident, (3) eighteen years of age, and (4) lawfully registered to vote in the election before voting in an Arkansas election. Ark. Const. art. 3, § 1. These four qualifications set forth in our state's constitution simply do not include any proof-of-identity requirement. Further, with the legislature's passage of Act 595 requiring this additional qualification, we cannot determine any "set of

14

circumstances exists under which [Act 595] would be valid." *Edwards*, 946 F. Supp. 2d at 848. In *Bailey, Lieutenant-Governor v. Abington*, 201 Ark. 1072, 148 S.W.2d 176 (1941), we declared that

> [t]he fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. The court, therefore, should constantly keep in mind the object sought to be accomplished by its adoption.

*Id*. at 1078, 148 S.W.2d at 180. Given this "fundamental purpose," *id*., we adhere to the framers' intent conferred in article 3, section 1, of the Arkansas Constitution to require the foregoing four qualifications of voters in an Arkansas election and nothing more. To hold otherwise would disenfranchise Arkansas voters and would negate "the object sought to be accomplished" by the framers of the Arkansas Constitution. *Id*. Therefore, we hold that Act 595 requiring proof of identity is unconstitutional on its face and imposes a requirement that falls outside the ambit of article 3, section 1, of the Arkansas Constitution.

We do not interpret Act 595's proof-of-identity requirement as a procedural means of determining whether an Arkansas voter can "lawfully register[ ] to vote in the election." Ark. Const. art. 3, § 1(4). Under those circumstances, Act 595 would erroneously necessitate every lawfully registered voter in Arkansas to requalify themselves in each election. *See generally* Ark. Const. amend. 51 (proposed by initiative petition, approved at the general election in 1964, and providing for an extensive voter-registration process whereby proof of identity is required). On this issue, Appellants cite numerous cases from other jurisdictions declaring a voter's proof of identity simply as much-needed regulations to verify voter

registration. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008) (plurality opinion); *League of Women Voters of Indiana, Inc. v. Rokita*, 929 N.E.2d 758 (Ind. 2010); *Democratic Party of Ga., Inc. v. Perdue*, 707 S.E.2d 67 (Ga. 2011); and *City of Memphis v. Hargett*, 414 S.W.3d 88 (Tenn. 2013). However, these cases are inapposite to the present case because those courts interpreted the United States Constitution or their respective states' constitutions, and here, we address the present issue solely under the Arkansas Constitution.

Because we affirm the circuit court's ruling on Appellees' facial challenge, we decline to address Appellants' remaining arguments on the circuit court's grant of Appellees' motion for preliminary injunction, pursuant to Arkansas Rule of Civil Procedure 65 (2014), and the circuit court's denial of Martin's objections that sovereign immunity precludes an entry of a preliminary injunction. Further, the circuit court did not rule on the impairment allegation in Appellees' complaint, and as a result, we do not reach any as-applied constitutional arguments raised by the parties.

Mandate to issue immediately.

Affirmed.

BAKER, GOODSON, and HART, JJ., concur.

**COURTNEY HUDSON GOODSON, Justice, concurring.** In the case at bar, the majority strikes down Act 595 of 2013 by holding that voter identification constitutes a "qualification" for voting in violation of article 3, section 1 of the Arkansas Constitution.[1]

---

[1] In so holding, this court subjugates Arkansas to a minority of one: the only state in the union to hold that voter-identification laws constitute a voting qualification. *See e.g.*

16

I would affirm, but rather because the Act failed to obtain a two-thirds majority vote in both houses of the General Assembly as required by amendment 51, section 19. As a consequence, I do not believe that it is necessary to decide whether the Act can withstand constitutional scrutiny under article 3. Accordingly, I concur in the decision to affirm.

With the adoption of the Arkansas Constitution in 1874, the people of Arkansas reserved all powers relating to voting and elections to themselves, by stating,

> Elections shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage; nor shall any law be enacted, whereby the right to vote at any election shall be made to depend upon any registration of the elector's name; or whereby such right shall be impaired or forfeited, except for the commission of a felony at common law, or upon lawful conviction.

Ark. Const. art. 3, § 2 (1874), *superseded by* Ark. Const. amend. 39. Through this provision, it is clear that the people of Arkansas jealously guarded the right of suffrage and restricted the General Assembly from enacting any law impairing such right. In 1948, the people elected to grant the General Assembly the authority to register voters through the adoption of amendment 39, and in 1964, the people passed amendment 51, which is a comprehensive regulatory scheme governing the registration of voters. Amendment 51 codifies the power of the General Assembly to "establish a system of permanent personal registration as a means

---

*Democratic Party of Georgia, Inc. v. Perdue*, 707 S.E.2d 67 (Ga. 2011); *League of Women Voters of Indiana, Inc. v. Rokita*, 929 N.E.2d 758 (Ind. 2010); *City of Memphis v. Hargett,* 414 S.W.3d 88 (Tenn. 2013); *League of Women Voters of Wisconsin Educ. Network, Inc. v. Walker*, 851 N.W.2d 302 (Wis. 2014). Because this case presents only a facial challenge to Act 595, we are precluded from analyzing whether the law is unnecessarily burdensome so as to effectively amount to a new qualification.

of determining that all who cast ballots in general, special and primary elections in this State are legally qualified to vote in such election, in accordance with the Constitution of Arkansas and the Constitution of the United States." Ark. Const. amend. 51, § 1. Consequently, in my view, if the General Assembly possesses the power to enact Act 595 at all, that power necessarily emanates from amendment 51.

Section 6 of the amendment details the existing requirements for identification and registration of qualified voters and notably, does not require a photo identification. Instead, section 6 provides that an applicant is required to provide a driver's license, or the last four digits of a social security number, but if neither of those can be provided, the Secretary of State can assign a number to serve as a means of identifying the applicant for voter-registration purposes. Section 19 of the amendment provides that the General Assembly may amend the amendment if certain conditions are met, stating,

> The General Assembly may, in the same manner as required for amendment of laws initiated by the people, amend Sections 5 through 15 of this amendment, so long as such amendments are germane to the amendment, and consistent with its policies and purposes.

Ark. Const. amend. 51, § 19. Amendment 7 to the Arkansas Constitution, codified at article 5, section 1, clarifies that laws initiated by the people may be amended through a two-thirds vote of both houses of the General Assembly. Thus, the General Assembly may modify the requirements for identifying qualified voters only through an amendment to amendment 51 that passes by a two-thirds vote.

At bottom, the issue in this case is whether the enactment of Act 595 is a valid and constitutionally authorized exercise of legislative authority under amendment 51, or whether the Act impermissibly adds a voter qualification in violation of article 3. In this case, however, we need not decide the constitutionality of Act 595 pursuant to article 3 because, even if it had been passed under the authority of amendment 51, it did not achieve the two-thirds vote that is required in section 19. Ark. Const. amend. 51, § 19. Indeed, the appellant concedes that the General Assembly did not enact its voter-identification provision as an amendment to amendment 51 or follow the proper provisions therein. As a consequence, Act 595 is null and void for that reason alone, which requires this court to affirm the circuit court's decision striking down the Act.

Because the Act is invalid, we need not decide whether it would otherwise pass constitutional scrutiny. In fact, it is our duty to refrain from addressing constitutional issues where, as here, the case can be disposed of without determining constitutional questions. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858; *Daniel v. Spivey*, 2012 Ark. 39, 386 S.W.3d 424; *Solis v. State*, 371 Ark. 590, 269 S.W.3d 352 (2007) (holding that, if the case can be resolved without reaching constitutional arguments, it is our duty to do so); *Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996) (holding that constitutional issues are not decided unless it is necessary to the decision). Any opinion offered by this court would be purely advisory, and it is well settled that this court does not issue advisory opinions. *Goodloe v. Goodloe*, 2014 Ark. 300, ___ S.W.3d ___.

Because the Act failed to obtain a two-thirds vote, it is invalid. As a consequence, it is wholly unnecessary to decide whether the Act added a new qualification to voting as prohibited by article 3. Therefore, I concur in the decision striking down the Act.

BAKER and HART, JJ., join.

*AJ Kelly*, Deputy Secretary of State, Arkansas Secretary of State, *Martha Adcock*, General Counsel, and *L. Justin Tate*, Associate General Counsel, for appellant Mark Martin.

*Dustin McDaniel*, Att'y Gen., by: *David A. Curran*, Deputy Att'y Gen., and *C. Joseph Cordi Jr.*, Sr. Assistant Att'y, for separate appellants Mark Martin et al.

*James, Carter & Coulter, PLC*, by: *Jeff R. Priebe*; and
*Appellate Solutions, PLLC d/b/a Riordan Law Firm*, by: *Deborah Truby Riordan*, for appellees.

*Sprinkle Firm*, by: *Maximillan R.X. Sprinkle*; and
*Christina Swarns*, *Ryan P. Haygood*, *Natasha M. Korgonkar*, *Leah C. Aden*, and *Deuel Ross*, NAACP Legal Defense & Educational Fund, Inc., amicus curiae for appellees.

*Weil, Gotshal & Manges LLP*, by: *David B. Bird*, *Kristen M. Murphy*, and *Cheryl James*;
*Myrna Pérez*, *Michael C. Li*, and *Jennifer L. Clark*, Brennan Center for Justice at NYU School of Law; and
*Cullen & Co., PLLC*, by: *Tim Cullen* for amici curiae Dr. Thomas DeBlack, Dr. William Schreckhise, Dean John DiPippa, and Nate Coulter in support of appellees.