Howard W. Brill, Chief Justice, dissenting. Well, they emptied out my pockets, took my pills and guitar picks. I said: “Wait, my name is ...” “Awe shut up.” Well, I sure was in a fix. ]¿The sergeant put me in a cell, then he went home for the night; I said: “Come back here, you so and so; I ain’t bein’ treated right.” Well, they’re bound to get you,, cause they got a curfew, And you go to the Starkville City Jail. I started pacin’ back and forth, and now and then I’d yell, And kick my forty dollar shoes against the steel floor of my cell. I’d walk awhile and kick awhile, and all night nobody came. Then I sadly remembered that they didn’t even take my name. At 8 a.m. they let me out. I said: “Gimme them things of mine!” They gave me a sneer and a guitar pick, and a yellow dandelion. They’re bound to get you, ’cause they got a curfew, And you go to the Starkville City Jail. After being arrested for trespassing and picking flowers, Johnny Cash[1] spent the night in the Starkville City Jail. His ballad suggests that he was not taken before a magistrate or given the opportunity to be released on bail. As presented in this matter, the issue is whether an Arkansas judge, after concluding that a prisoner is eligible to be released on bail, may inform him that the only acceptable form of bail' is cash. I agree with the majority that while the appropriateness of the bail in this matter is moot, the- exceptions to the mootness doctrine permit us to hear the underlying issue. I also agree that cash is a sufficient surety for bail. Finally, I agree that no Arkansas law answers the question of whether cash-only bail is permitted by the Arkansas Constitution. But |inI see no reason to look to the opinions of Washington, Wyoming, or any other sister state.[2] Because-I disagree with the majority’s analysis and conclusion that cash-only is permitted, I respectfully dissent.- The issue before us is whether a judicial order requiring cash-only for bail violates the language in 'article-2, section 8 of the Arkansas Constitution, which provides, “All persons shall, before conviction, be bailable by sufficient sureties.” This declaration of an individual right appears almost verbatim in each of the four previous constitutions of the state of Arkansas, with the word “securities” used in the first three. See Ark. Const, of 1836, Art, 2, section 16 (1838) (“[A]ll prisoners shall be bailable by sufficient securities.”); Ark. Const, of 1861, art. 2, section 16 (“[A]ll free white prisoners, Indians included, shall be bailable by sufficient securities”); Ark. Const, of 1864, art. 2, section 16 (“[A]ll prisoners shall be bailable by sufficient securities.”). Article 2, section 9 of the Í868 constitution contains the precise language we have today in our current 1874 constitution: “All persons shall, before conviction, be bailable by sufficient sureties.” Ark. Const, of 1874 art. 2, section 8. We construe this constitutional language, employing familiar rules of construction. “The fundamental, purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. The court should therefore constantly keep in mind the object sought to be accomplished by its adoption.” Martin v. Kohls, 2014 Ark. 427, at 15, 444 S.W.3d 844, 852 (quoting Bailey v. Abington, 201 Ark. 1072, 1078, 148 S.W.2d 176, 180 (1941)). Furthermore, [i]n interpreting the' language of a provision of the Arkansas Constitution, we have said that we endeavor to effectuate as nearly as possible the-intent of the people, in passing the measure. We have also adopted the rule'of construction in connection with interpreting provisions of our State Constitution that we give language its plain and ordinary meaning. Allred v. McLoud, 343 Ark. 35, 41, 31 S.W.3d 836, 839 (2000). Applying these principles of constitutional interpretation to the provision at hand, we attempt to ascertain the intent of the framers in providing, and the intent of the people in adopting, the guarantee that prisoners shall “be bailable by sufficient sureties.” Thus, we look to the words at the time this language was drafted. “Bailable” meant'“entitled to be discharged on bail,” and “bail” was defined as “delivery of a person arrested, out of the custody of the law, into the safe'keeping or friendly custody of persons who become sureties for his return of appearance.” Burrill’s Law Dictionary (2d ed. 1859). A “surety” was “[o]ne who engages to be answerable for the debt, default, or miscarriage of another; one who undertakes to do some act in the event of the failure of another to do it, and as security for its being done.” Id. Taking these definitions together, “bailable by sufficient sureties” meant that in a .case where bail was available, the prisoner was entitled to be released into the custody of a person, a “surety,” who was answerable for any subsequent failure of the prisoner to appear. The prisoner had a right to engage a willing person to serve as -surety, and release upon such engagement by a sufficient surety. [iaThis right was provided in almost- every state constitution adopted after 1776. June Carbone, Through the Emperor’s New Clothes: Rediscovery of Basic Principles in the Administration of Bail, 34 Syracuse L.Rev. 517, 532 (1983). As of 1845, seventy-five percent of the states had a similar “right to bail” clause in their constitutions. Matthew J. Hegreness, America’s Fundamental and Vanishing Right to Bail, 55 Ariz. L. Rev 909, 927 (2013). During this time, if in a particular case bail was permitted, then the court had no right to refuse bail on account of the surety offered, if it was “pecuniarily sufficient.” Joel Prentiss Bishop, Criminal Procedure; or, Commentaries on the Law of Pleading and Evidence and the Practice in Criminal Cases 157 (Little, Brown, and Company, 3d ed. 1880) (“If, in these cases, sureties pecuniarily sufficient present themselves, the magistrate has no right to reject them' out of dislike to their politics or personal character.”) (citing Regina v. Badger, 4 Q.B. 468 (1843)); see also Franklin Fiske Heard, Heard on the Criminal Law 246-47 (Little, Brown, and Company 1882) (“[T]he duty of magistrates in taking bail was strictly confined to ascertaining the solvency of the bail ... all the magistrates have to do is to be satisfied that the persons proposed as bail are possessed of sufficient property_”). The plain language of article 2, section 8, as well as contemporaneous legal principles regarding bail, reveal the object sought to be accomplished by the framers and the citizens. If a prisoner could procure a surety with sufficient property,, then he was entitled to be released prior to trial. Though our methods of bail have evolved somewhat since 1874, the same purpose must be given effect today. If a prisoner can-procure a sufficient surety that satisfies the amount set for bail, then he is -entitled to be released. 113Cash-only bail may have definite advantages: for example, the court may believe that the defendant is unlikely to appear or to flee the jurisdiction; a cash bond may be a'stronger incentive for a defendant to appear for the- hearing. On the other hand, cash-only bail has drawbacks. It may have an unfair, even disparate impact, upon lower-income defendants without resources. Gash-only bail, particularly in larger amounts, may be used punitively. But my dissent is not based on practice or policy. It is based on the language of the Arkansas Constitution. Any possible advantages must give way to the constitutional intent that has been a declared right guaranteed in Arkansas since 1836. Requiring cash-only for bail strips a-person of his constitutional right to provide any sufficient surety for his release. Accordingly, I would hold that imposing a cash-only bail requirement violates article 2, section 8 of the Arkansas Constitution.[3] . Johnny Cash was bom in Kingsland (Cleveland County) in 1932 and raised in Dyess (Mississippi County). When he died in 2003, the words and music of the Man in Black were known around the world. The Arkansas House of Representatives calls on all Arkansans to remember February 26 of each year as “Johnny Cash Day.”' House Concurrent Resolution 1003 of 1969: "[H]e is truly representative of the spirit and ideals which have made our state great....” . 1 Arkansas Attorney General Opinion No. 99-158 relied on an Ohio decision in concluding that, under certain circumstances, an Arkansas judge can deny a commercial surety bond and impose a "cash only” requirement. . Rule 9.2 of the Arkansas Rules of Criminal Procedure provides that in those instances when bail is appropriate, cash bail is permitted. But the language does not authorize cash-only bail.