JOSEPHINE LINKER HART, Associate Justice | Nathaniel Smith, M.D., M.P.H., Director of the Arkansas Department of Health (Smith), appeals from the circuit court’s order granting declaratory judgment and injunctive relief to three couples, appellees Marisa N. Pavan and Terrah D. Pavan, Leigh D.W. Jacobs and Jana S. Jacobs, and Courtney M. Kassel and Kelly L. Scott. At issue is whether the disposition of this case is controlled by the doctrine of res judicata and whether two state statutes governing the issuance of birth certificates violate federal constitutional rights to equal ^protection and due process under Obergefell v. Hodges, — U.S. -, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015), which held that the right of same-sex couples to marry is a fundamental right inherent in the liberty of the person. In challenging the circuit court’s decision on appeal, Smith argues that the circuit court (1) erred in finding that another circuit court had previously granted in-junctive relief regarding birth certificates in its orders in Smith v. Wright, 60CV-13-2662 (Pulaski Co. Cir. Ct. May 9, 2014 and May 15, 2014), that was later appealed to this court and dismissed by this court as moot, Smith v. Wright, 2015 Ark. 298 (per curiam); (2) erred in granting declaratory relief based on its conclusion that Oberge-fell had resolved issues relating to the issuance of birth certificates for the minor children of same-sex couples; (3) erred in finding a due-process violation by the Arkansas Department of Health’s (ADH) refusal to issue birth certificates for minor children of married female couples showing the name of the spouse of the mother; (4) erred in finding an equal-protection violation by ADH’s refusal to issue birth certificates for minor children of married female couples showing the name of the spouse of the mother; (5) erred by not applying to the facts of this case Arkansas Code Annotated section 9-10-201(a) (Repl. 2015), which addresses children born to married women by means of artificial insemination. We reverse and dismiss. Appellees are three married female couples. The Pavans were married in New Hampshire in 2011, and the minor child was born to Terrah in Arkansas in May 2015. The child was conceived through artificial insemination involving an anonymous donor. ADH would not place Marisa’s name on the minor child’s birth certificate. The Jacobses were | ^married in Iowa in 2010, and the minor child was born to Leigh in Arkansas in June 2015, also having been conceived through artificial insemination involving an anonymous donor. ADH would not place Jana’s name on the minor child’s birth certificate. Courtney Kassell and Kelly Scott resided in Arkansas when the minor child was born to Courtney in Arkansas in January 2015. The conception took place through artificial insemination involving an anonymous donor. The couple married in July 2015. Both before and after their marriage, the couple sought to have Kelly’s name placed on the minor child’s birth certificate, but ADH denied the request. Appellees filed suit in the circuit court, seeking a declaration that the refusal to issue birth certificates with the names of both spouses on the birth certificates of their respective minor children violated their constitutional rights to equal protection and due process. Appellees also sought to have certain statutory provisions governing the issuance of birth certificates declared unconstitutional as written. Ap-pellees further sought to enjoin Smith from refusing to list the names of both spouses of a same-sex couple on the birth certificate of the minor child. The three couples also asked for an order requiring Smith to issue corrected birth certificates naming both spouses. Smith answered the complaint, and both parties filed competing motions for summary judgment. At the conclusion of the hearing on the motions, the circuit court announced its intention to order Smith to amend the birth certificates of appellees’ children. Smith filed a motion for stay. In a subsequent order and memorandum opinion, the motion for stay was denied. In the order and opinion, the circuit court again ordered Smith to issue three | ¿amended birth certificates showing the names of both spouses on the birth certificates of their respective minor children.[1] The court, however, dismissed the claims made by the couples in their capacities as representatives of their respective minor children.[2] In reaching its decision, the circuit court concluded that the circuit court in Wright had previously granted injunctive relief regarding birth certificates, and thus, the case was controlled by res judicata. The circuit court also declared as unconstitutional portions of Arkansas Code Annotated section 20-18-401(e), (f) (Repl. 2014), which governs entry of the name of the mother and the father of the child on birth certificates. Further, the circuit court stated that it would interpret Arkansas Code Annotated section 20—18—406(a)(2), which addresses the issuance of a new birth certificate to a “person” who has been “legitimated,” in a manner that the circuit court concluded would make the statute constitutional. Smith brought this appeal from the circuit court’s decision. Summary judgment may be granted only when there are no genuine issues of material | ¿fact to be litigated, and the moving party is entitled to judgment as a matter of law. See, e.g., Washington Cty. v. Bd. of Tr. of the Univ. of Ark, 2016 Ark. 34, at 3, 480 S.W.3d 173, 175. Ordinarily, upon reviewing a circuit court’s de-cisión on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. Id., 480 S.W.3d at 175. However, in a ease where the parties agree on the facts, we determine whether the appellee was entitled to judgment as a matter of law. Id., 480 S.W.3d at 175. When parties file cross-motions for summary judgment, as in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. Id., 480 S.W.3d at 175. As to issues of law presented, our review is de novo. Id, 480 S.W.3d at 175. We first address Smith’s argument that the circuit court erred in concluding that the disposition of this case is controlled by res judicata. In its opinion, the circuit court noted that Smith was a party in Wright. The circuit court further noted that the Wright plaintiffs filed a summary-judgment motion, requesting that the court issue a permanent -mandatory injunction [requiring Defendant Nathaniel Smith, M.D., as interim director of the Arkansas Department of Health, and his successors, to henceforth issue birth certificates for children born of marriages between members of the same sex that were entered into in other states to reflect that the married parents are the parents of the children born of the marriage; and, also, requiring said Defendant to issue amended birth certificates to any married couples of the same sex that previously gave birth to children in Arkansas to reflect that the married parents are the parents of the children born of the marriage. The circuit court further noted that in Wright, the final judgment of May 15, 2014, stated that it is .and was the intent of the Order to grant Plaintiffs Motion for Summary Judgment without exception and as to all injunctive relief requested therein. In fact, this was- the | (¡expressly stated title of the May 9, 2014 Order. Plaintiffs motion requested injunctive relief and properly identified the relevant laws at issue in this challenge. The circuit court concluded that the claims brought by the Pavans and the Jacobses were fully and completely litigated in Wright and that the Wright injunction is res judicata and binding on Smith. On appeal, Smith argues that the Wright court did not expressly grant injunctive relief regarding birth certificates. The parties note that the May 15, 2014 order provided that Plaintiffs request for a permanent injunction is GRANTED and the Court does hereby permanently enjoin all Defendants ... from enforcing Amendment 83 to the Arkansas Constitution, Act 146 of 1997, § l(b)-(c) (codified at Ark. Code Ann. 9—11—208(a)(1)—(2)) and Act 144 of 1997 (codified at Ark. Code Ann. §§ 9-ll~107(b), -109); and all other state and local laws and regulations identified in Plaintiffs complaint or otherwise in existence to the extent they do not recognize same-sex marriages validly contracted outside Arkansas, prohibit otherwise qualified same-sex couples from marrying in Arkansas or deny same-sex married couples the rights, recognition and benefits associated with marriage in the State of Arkansas. What is at issue here is whether the doctrine of collateral estoppel applies. Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact previously litigated by a party. See, e.g., Johnson v. Union Pac. R.R., 352 Ark. 534, 544, 104 S.W.3d 745, 750 (2003). The elements of collateral estoppel are that (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) it must have been determined by a valid and final judgment, and (4) the determination must have been essential to the judgment. Id., 104 S.W.3d at 750. Rule 65(d)(1) of the Arkansas Rules of Civil Procedure requires that “[ejvery order granting an injunction and every restraining order must (A) state the reasons why it issued; |7(B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.” Thus, an injunction order cannot refer to the complaint or any other document. See Baptist Health v. Murphy, 362 Ark. 506, 209 S.W.3d 360 (2005) (applying rule). A fair reading of the Wright orders indicates that the orders did not address the issues presented here relating to birth certificates. In fact, birth certificates are not mentioned at all in the orders. Instead, in examining the Wright orders, the Wright court ruled on the constitutionality of amendment 83 and statutes governing marriage. We note that the circuit court, in concluding that Wright should be given the effect of res judicata, ruled that if the Wright judgment did not comply with Rule 65(d) concerning the specificity of its in-junctive language, then that issue could have been raised by Smith in an appeal in Wright. Further, the circuit court stated that when this court dismissed the Wright appeal as moot, Smith had the opportunity to point out to the court that all of the issues relating to the injunction were not resolved by Obergefell. We hold, however, that the language in the Wright orders would not have placed Smith on notice that he needed to appeal those, orders to this court and raise on appeal arguments related to the overbreadth of the -injunctive relief granted and to the issuance of birth certificates. In the next issue on appeal, Smith argues that the circuit court erred in granting declaratory relief based on Obergefell. The circuit court’s opinion suggests that it based its analysis of the constitutionality of the birth-certificate statutes at issue here entirely on the | «holding of Obergefell. There are two statutes that the circuit court considered. The first, Arkansas Code Annotated section 20-18-401 provides in part as follows; (e) For the purposes of birth registration, the mother is deemed to be the womap who gives birth to .the child, unless otherwise provided by state law or determined by a court of competent jurisdiction prior to the filing of the birth certificate. The information about the father shall be entered as provided in subsection (f) of this section.' (f)(1) If the mother was married at the time of either conception or birth or between conception and birth the name of the husband shall be entered on the certificate as the father of the child, unless: (A) Paternity has been determined otherwise by a court of competent jurisdiction; or (B) The mother executes an affidavit attesting that the husband is not the father and that the putative father is the father, and the putative father executes an affidavit attesting that he is the father and the husband executes an affidavit attesting that he is not the father. Affidavits may be joint or individual or a combination thereof, and each signature shall be individually notarized. In such event, the putative father shall be shown as the father on the certificate and the parents may give the child any surname they choose. (2) If the mother was not married at the time of either conception or birth or between conception and birth, the name of the father shall not be entered on the certificate of birth without an affidavit of paternity signed by the mother and the person to be named as the father. The parents may give the child any surname they choose. (3) In any case in which paternity of a child is determined by a court of competent jurisdiction, the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court. (4) If the father is not named on the certificate of birth, no other information about the father shall be entered on the certificate. In considering Arkansas Code Annotated section 20-18-401(e), (f), the circuit court found that the statute “intertwined the concepts of ‘parent’ with certain rights and presumptions occurring within a marital relationship, using now impermissible limiting spousal terms of ‘husband’ and ‘wife.’ ” The circuit court concluded that “[s]uch language categorically prohibits every same-sex married couple, regardless of gender, from enjoying the |9same spousal benefits which are available to every opposite-sex married couple.” The circuit court found that, based on Obergefell, the majority of subsections (e) and (f) had to be struck down as unconstitutional. The other statute at issue, Arkansas Code Annotated section 20-18-406(a)(2), provides in part as follows: (a) The State Registrar of Vital Records shall establish a new certificate of birth for a person born in this state when he or she receives the following: [[Image here]] (2) A request that a new certificate be established and any evidence, as required by regulation, proving that the person has been legitimated, or that a court of competent jurisdiction has determined the paternity of the person or that both parents have acknowledged the paternity of the person and request that the surname be changed from that shown on the original certificate. In considering this statute, the circuit court found that, in light' of Obergefell, the phrase “person to be legitimated” is declared to include the minor children of any couple—same-sex or opposite-sex— who married subsequent to the birth of the minor child, and who present proof to the Arkansas Department of Health of the date of birth of the minor child and of the date of their marriage. In the event any biological parent is listed on a birth certificate sought to be amended, a court order shall be required before an amended certificate is issued which removes such person(s) name. In the event one or both of the spouses was married to another individual at any time from the birth of the minor child forward, no amended birth certificate shall be issued absent a court order naming the current spouses as the parents of the minor child. We disagree with the circuit court’s analysis of both statutes. Obergefell did not address Arkansas’s statutory' framework regarding birth certificates, either expressly or impliedly. Rather, the United States Supreme Court stated in Obergefell that “the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be 1 ^deprived of that right and that liberty.” Obergefell, — U.S. -, 135 S.Ct. at 2604. The Court mentioned birth certificates only once, stating, Indeed, while the States are in general free to vary the benefits they confer on all married couples, they have throughout our history made marriage the basis for an expanding list of governmental rights, benefits, -and responsibilities. These aspects of marital status include: taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical decisionmaking authority; adoption rights; the rights and benefits of survivors; birth - and death certificates; professional ethics rules; campaign finance restrictions; workers’ compensation benefits; health insurance; and child custody, support, and visitation rules. Obergefell, — U.S. -, 135 S.Ct. at 2601. This single mention of birth certificates was related only to its observation that states conferred benefits on married couples, which in part demonstrated that “ the reasons marriage is fundamental under the Constitution apply with equal force to same-sex couples.” Id. at -, 135 S.Ct. at 2599. The amicus curiae brief notes that in Obergefell, the Court stated that it declined to “stay its hand to allow slower case-by-case determination of the required availability of specific public benefits to same sex-couples” because “it would deny gays and lesbians many rights and responsibilities intertwined with marriage.” Id. at -, 135 S.Ct. at 2606. We conclude below, however, that Obergefell does not impact these statutes governing the issuance of birth certificates and that these statutes pass constitutional muster.[3] In interpreting the statutes, every act carries a strong presumption of constitutionality. 111 Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and before an act will be held unconstitutional, the incompatibility between it and the constitution must be clear. Mendoza v. WIS Int’l, Inc., 2016 Ark. 157, at 3, 490 S.W.3d 298, 300. When possible, we will construe a statute so that it is constitutional. Id., 490 S.W.3d at 300. In determining the constitutionality of a statute, we look to the rules of statutory construction. Id., 490 S.W.3d at 300. When construing 'a statute, the basic rule is to give effect to the intent of the legislature, and where the language of a statute is plain and unambiguous, we determine the legislative intent from the ordinary meaning of the language used. Id., 490 S.W.3d at 300. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id., 490 S.W.3d at 300. This court reviews both the circuit court’s interpretation of the constitution as well as issues of statutory interpretation de novo, because it is for this court to determine the meaning of a statute. Brown v. State, 2015 Ark. 16, at 6, 454 S.W.3d 226, 231. Arkansas Code Annotated, section 20-18-401(e) provides that the mother .is deemed to be the woman who gives birth to the. child. Subsection (f) governs who would be considered the father, providing that if the mother was married at the time of either conception or birth or between conception and birth the name of the husband shall be entered on the certificate as the father of the child. Because we determine legislative intent, from the ordinary meaning of the language used, we note that “husband” is defined as “a married man.” Webster’s Third New International Dictionary 1104 (2002). “Father” is defined |iaas “a man who has begotten a child.” Webster’s Third New International Dictionary 828 (2002). Thus, in subsection (f), “father” identifies the child’s biological father, and “husband” identifies the mother’s male spouse. The mothers spouse, or “husband,” is entered on the certificate as the “father” of the child if the mother was married at the time of either conception or birth or between conception and birth. Subsection (f)(1), however, further provides that the name of the husband would not be entered on the certificate as the father upon a determination of paternity by a court order or by the proper affidavits .regarding the child’s paternity. Thus, the statute centers on the. relationship of the biological mother and the biological father to the child, not on the marital relationship of husband and wife. We see no basis for the circuit court’s conclusion that the statute impermissibly “intertwined” the concepts of “parent” with the rights and presumptions of marriage by using the words “husband” and “wife.” We hold that Arkansas Code Annotated section 20-18-401(e), (f) does not run afoul of Obergefell. Under Arkansas Code Annotated section 20-18-406(a)(2), a new birth certificate is provided when it is proved that the “person has been legitimated.” While the phrase “person has been legitimated” is not defined, we have observed that “an illegitimate child is a child who is born at the time that his parents, though alive, are not married to each other,” and that “a child is considered legitimate if the parents were married at the time of its conception and before its birth, even though they were not married to each other at the time the child was born.” Willmon v. Hunter, 297 Ark. 358, 360, 761 S.W.2d 924, 925 (1988). Thus, Arkansas 11sCode Annotated section 20-18-406(a)(2) provides that a new birth certificate may be issued on a showing that the child’s parents, who conceived the child, have married. This interpretation comports with ADH’s own regulations, which provide that “[i]f the natural parents marry after the birth of a child, a new certificate of birth shall be prepared by the State Registrar for a child born in this State, upon receipt of an affidavit of paternity signed by the natural parent of said child, together with a certified copy of the parents’ marriage record.” Gode Ark. R. 007.12.1-5.2. Thus, this statute considers the relationship of the biological mother and the biological father to the child. Accordingly, we see no basis for the circuit court’s conclusion that Obergefell requires this court to construe the biologically based phrase “person to be legitimated”— in a statute governing birth certificates— to include the minor children of a same-sex couple who married after the birth of the minor child. We hold that Obergefell did not answer the questions presented in this case regarding the constitutionality of Arkansas statutes relating to the issuance of birth certificates. We turn to the circuit court’s finding that Arkansas Code Annotated section 20-18-401(e), (f) and Arkansas Code Annotated section 20-18-406(a)(2) unconstitutionally deprive appellees of due process and equal protection. There are two primary ways to challenge the constitutionality of a statute: an as-applied challenge, in which the court assesses the merits of the challenge by considering the facts of the particular case in front of the court, not hypothetical facts in other situations, and a facial challenge, which seeks to invalidate the statute itself. Laymon v. State, 2015 Ark. 485, at 3, 478 S.W.3d 203, 205. A facial invalidation | uof a statute is appropriate if it can be shown that no set of circumstances exists under which the statute would be valid. Martin v. Kohls, 2014 Ark. 427, at 11, 444 S.W.3d 844, 850. We conclude that because the couples received the relief they requested and because that relief is not challenged on appeal—the issuance of birth certificates naming both spouses on the birth certificate—we do not have before us an as-applied challenge. Though the circuit court did not describe the challenge presented by the appellees, we conclude that their challenge was a facial challenge. In our analysis of the statutes presented above, it is the nexus of the biological mother and the biological father of the child that is to be truthfully recorded on the child’s birth certificate. That truthful information is required in the application for an initial or amended birth certificate is evidenced by Arkansas Code Annotated section 20-18-105(a)(l), which allows a person to be punished by a $10,000 fine and five years’ imprisonment for knowingly making a false statement in a. vital record. Our conclusion is supported by the only evidence presented in the record, the affidavit of Melinda Allen, ADH’s Vital Records State Registrar. Allen averred that, in that capacity, she supervised the issuance and maintenance of birth certificates. She further averred as follows: The overarching purpose of the vital records system is to ensure that vital records, including birth certificates as well as death certificates and marriage certificates, are accurate regarding the vital events that they reflect. The accuracy of the records allows ADH to compile, maintain, and analyze vital statistics. ADH had a legitimate interest in maintaining reliable and comprehensive statistics of all vital events for purposes of public health research and identification of public health trends. Identification of biological parents through birth records is critical to ADH’s identification of public health .trends, and it can. be critical to an individual’s | ^identification of personal health issues and genetic conditions. Even in the case of-surrogacy where the biological mother is never intended to be the legal parent of a child, the statutes provide that an initial birth certificate is issued reflecting the biological mother as a parent, and then an amended birth certificate is issued reflecting the intend; ed parent(s) as legal parent(s). The original birth certificates -is sealed, but maintained by ADH. In cases, of adoption, ADH also maintains sealed copies of original birth certificates reflecting biological parentage. This is important because a child may need to access information about biological parentage for health-related reasons. The State has a legitimate interest in maintaining such information (even if under seal and releasable only pursuant to a court order) in order to protect the future health of the child. We now consider appellees’ due process challenge to Arkansas. Code Annotated section 20-18-401(e), (f) and Arkansas Code Annotated section 20-18-406(a)(2). On the question of due process, the United States Supreme Court has stated, Under the Due Process Clause of the Fourteenth Amendment, no State shall “deprive any person of life, liberty, or property, without due process of law.” The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. In addition these liberties extend to certain personal choices central to individual dignity, and autonomy, including intimate, choices that define personal identity and beliefs. The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution. That responsibility, however, “has not been reduced to any formula.” Rather, it requires courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect. Obergefell, — U.S. -, 135 S.Ct. at 2597-98(internal citations omitted). As stated in the court’s order, the examples provided by appellees of how the failure to include both same-sex spouses on birth certificates or amended birth certificates may adversely affect their legal status regarding the minor children included identification procedures for Social Security numbers and passports, denial of the right to authorize medical care for the minor, denial of the right to authorize school related 11fiactivities, denial of the right to apply for needed governmental or employment related benefits, denial of suiwivor benefits in the case of death of one of the spouses, denial to the child of inheritance rights, disruption of the parent-child relationship in th¿ event of divorce of the same-sex couple, and the award of child support in the event of divorce of a same-sex couple. In its ruling, however, the circuit court stated that its order “does not legally resolve any of those potential issues.” Furthermore, appellees did not present evidence, or even statutory authority, to support them assertion that any of these issues are answered by who is listed as the mother and the father on a birth certificate. As noted above, the Obergefell Court held that the right of same-sex couples to marry is a fundamental right inherent in the liberty of the person under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Obergefell, — U.S. -, 135 S.Ct. at 2604. The Court has further stated that “it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.” Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In finding a due-process violation, however, the circuit court has conflated distinct categories of marriage, parental rights, and vital records. The question presented in this case does not concern either the right to same-sex marriage or the recognition of that marriage, or the right of a female same-sex spouse to be a parent to the child who was born to her spouse. What is before this court is the narrow issue of whether the birth-certificate statutes as written deny the appellees due process. The purpose of the statutes is to truthfully record | 17the nexus of the biological mother and the biological father to the child. On the record presented, we cannot say that naming the nonbiological spouse on the birth certificate of the child is an interest of the person so fundamental that the State must accord the interest its respect under either statute. As for appellees’ equal-protection challenge to Arkansas Code Annotated section 20-18-401(e), (f) and Arkansas Code Annotated section 20-18-406(a)(2), we have observed here that under these statutes, the birth certificate evidences biological relationships. Appellees contend that the statutes result in disparate treatment by permitting male spouses of female mothers to be listed as fathers, even though the male spouse may not be the child’s biological father. We observe, however, that under Arkansas Code Annotated section 20-18-401(f), the husband’s designation as father may be refuted, which evidences that the biological connection is what the birth certificate intends to record. Moreover, our statutes penalize anyone who knowingly makes a false statement in a vital record. Ark. Code Ann. § 20-18-105(a)(l). In the situation involving the female spouse of a biological mother, the female spouse does not have the same biological nexus to the child that the biological mother or the biological father has. It does not violate equal protection to acknowledge basic biological truths. As has been noted, [t]o fail to acknowledge even our most basic biological differences—such as the fact that a mother must be present at birth but the father need not be—risks making the guarantee of equal protection superficial, and so disserving it. Mechanistic classification of all our differences as stereotypes would operate to obscure those misconceptions and prejudices that are real. The distinction embodied in the statutory scheme here at issue is not marked by misconception and prejudice, nor does it show disrespect for either |1sdass. The difference between men and women in relation to the birth process is a real one, and the principle of equal protection does not forbid Congress to address the problem at hand in a manner specific to each gender. Tuan Anh Nguyen v. I.N.S., 533 U.S. 53, 73, 121 S.Ct 2053, 150 L.Ed.2d 115 (2001). Nevertheless, in considering an equal-protection claim, and in considering a heightened standard to withstand equal-protection scrutiny, it must be established at least that the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives. Id., 533 U.S. at 60, 121 S.Ct. 2053. We conclude that the evidence presented by Smith—the affidavit of the vital records state registrar—established that the challenged classification serves an important governmental objective—tracing public-health trends and providing critical assistance to an individual’s identification of personal health issues and genetic conditions—and that the means employed— requiring the mother and father on the birth certificate to be biologically related to the child—are substantially related to the achievement of those objectives. Finally, in his brief and during oral argument to this court, Smith cited Arkansas Code Annotated section 9-10-201(a), which provides that “[a]ny child born to a married woman by means of artificial insemination shall be deemed the legitimate natural child of the woman and the woman’s husband if the husband consents in writing to the artificial insemination.” In oral argument, Smith conceded that this statute is constitutionally infirm and suggests that if this court were to review this statute on appeal, the court could resolve many of the | ^concerns raised by the appellees by amending the wording of the statute. However, this court is not a legislative body, and it cannot change the wording of the statute. The legislative branch of the state government has the power and responsibility to proclaim the law through statutory enactments, and the judicial branch has the power and responsibility to interpret the legislative enactments. Fed. Express Corp. v. Skelton, 265 Ark. 187, 197-98, 578 S.W.2d 1, 7 (1979). Furthermore, the circuit court did not rule on the constitutionality of this statute. Thus, Smith has failed to preserve this issue for appeal. See, e.g., TEMCO Constr., LLC v. Gann, 2013 Ark. 202, at 12, 427 S.W.3d 651, 658. We decline to address Smith’s argument.[4] Because we conclude that the circuit court erred in finding that the case was controlled by Wright, and because we conclude that the circuit court erred in finding that Arkansas Code-Annotated section 20-18-401(e), (f) and Arkansas Code Annotated section. 20-18-406(a)(2) facially violated the appellees’ rights to. due process- and equal protection, we reverse and dismiss.[5] l2()On a collateral matter, in Smith v. Pavan, 2015 Ark. 474, 2015 WL 9259516 (per curiam), this court granted in part and denied in part Smith’s petition for an emergency stay pending appeal. This court also observed that the circuit court’s order contained “inappropriate remarks,” and we stated our intent to address the remarks following our receipt of the entire record on appeal. The gist of Judge Fox’s remarks, was that if this court granted the stay, then it would deprive persons of their constitutional rights, and that this court previously had deprived people of their constitutional rights in a separate matter. We remind Judge Fox that, in. accordance with the Arkansas Code of Judicial Conduct, all courts take great care to “uphold and apply .-the law” and “perform all duties of judicial office fairly and impartially.” Ark. Code Jud. Conduct R. 2.2. All courts intend to faithfully apply both federal and state constitutional law in a manner that does not result in the deprivation of constitutional rights. We remind Judge Fox that this same code requires a judge to “achat all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid | 21 impropriety and the appearance of impropriety.” Ark. Code Jud. Conduct R. 1.2. A remark made to gain the attention of the press and to create public clamor undermines “public confidence in the independence, integrity, and impartiality,” not only of this court, but also of the entire judiciary. Judge Timothy Davis Fox is hereby admonished for his inappropriate comments made while performing the duties of his judicial office.[6] Reversed and dismissed. Brill, C.J., and Wood, J'., concur in part and dissent in part. Danielson, J., dissents. . After the circuit court denied Smith’s petition for a stay, Smith petitioned this court for an emergency stay of the circuit court’s order. Because Smith indicated that he did not wish to challenge the portion of the order requiring him to provide amended birth certificates to the appellees, this court denied the petition for a stay as to the portions of the order and memorandum opinion ordering him to provide amended birth certificates to the appel-lees. This court granted the petition for an emergency stay as to the remainder of the order and memorandum opinion. This court also granted the motion of the American Civil Liberties Union and the Arkansas Civil Liberties Union for permission to file an amicus curiae brief. . The crux of the case before us is the registration of children’s births. Despite the central question of the children’s rights relating to their birth certificates, this question was not argued by the parties; nor was it addressed or ruled on by the circuit court. . Both Chief Justice Brill and Justice Daniel-son misread and essentially add to the language they cite from Obergefell to suggest that the United States Supreme Court has ruled on the issue before us. While. Justice Wood relies on Obergefell, she essentially acknowledges that Obergefell did not specifically address the issue before us. . Chief Justice Brill’s extended discussion of the statute is purely advisory in nature. As this court has said on numerous occasions, we neither answer academic questions nor issue advisory opinions. See, e.g., Hampton v. State, 2014 Ark. 303, at 7, 437 S.W.3d 689, 693. The State suggested that we rewrite this same statute to address .an issue that was never ruled on by the circuit court. Consistently with our longstanding practices' and jurisprudence, we decline to do so. We further, note that neither the Solicitor General in his oral argument nor Chief Justice Brill in his opinion has addressed the right of a child to knowledge of his or her biological parentage and the right of the child to a birth certificate issued by ADH that truthfully sets out his or her lineage. . Justice Wood contends that this court should reverse and vacate the circuit court's order to conduct a full evidentiary hearing in light of concessions made by the State. The parties, however, have not requested such relief. The parties consider the case fully litigated and ready for a determination concerning whether the circuit court committed trial error. It would be inappropriate for this court to reverse and remand a casé for retrial—not because the circuit court committed trial error—but because this court wants the parties to present more evidence and raise more issues, This court has repeatedly stated that matters outside of the record will not be considered on appeal. See, e.g,, McDermott v. Sharp, 371 Ark. 462, 465, 267 S.W.3d 582, 585 (2007). Justice Wood further suggests that this court might stay its hand and remand to allow action by the General Assembly. However, there is nothing in the record to suggest that the General Assembly will pass laws that will address issuance of birth certificates. Moreover, staying a case to await action by the General Assembly is unlike circumstances where we stay an appeal pending the disposition of another case that is on appeal in federal court that addresses the same issues. See Unborn Child Amendment Comm. v. Ward, 318 Ark. 165, 883 S.W,2d 817 (1994) (staying appeal of a circuit-court order after recognizing that, until such time as the federal court's decision is reversed by the appropriate appellate court, the permanent injunction issued by the federal district court will be binding on the State of Arkansas and its instrumentalities). . Citing several cases, Justice Danielson asserts that this court should not caution Judge Fox for his inappropriate comments made while performing the duties of his judicial office. These cases, however, are wholly inap-posite to the present situation; they do not involve the cautioning of a trial judge for comments made while performing judicial duties, but rather concern criminal or contempt proceedings against laymen. When one rules as a judge, he is governed by ethical considerations and restrictions not required or even expected of laymen. Experience has established that the public will benefit if the judge obeys them. The question presented is whether a circuit judge may indulge in unfounded and intemperate criticism or abuse of the courts while on the bench.