SLIP OPINION

Cite as 2016 Ark. 437

# SUPREME COURT OF ARKANSAS

No. CV–15–988

| | |
|---|---|
| NATHANIEL SMITH, M.D., MPH, DIRECTOR OF THE ARKANSAS DEPARTMENT OF HEALTH, IN HIS OFFICIAL CAPACITY, AND HIS SUCCESSORS IN OFFICE<br><br>APPELLANT<br><br>V.<br><br>MARISA N. PAVAN AND TERRAH D. PAVAN, INDIVIDUALLY, AND AS PARENTS, NEXT FRIENDS, AND GUARDIANS OF T.R.P., A MINOR CHILD; LEIGH D.W. JACOBS AND JANA S. JACOBS, INDIVIDUALLY, AND AS PARENTS, NEXT FRIENDS, AND GUARDIANS OF F.D.J., A MINOR CHILD; COURTNEY M. KASSEL AND KELLY L. SCOTT, INDIVIDUALLY, AND AS PARENTS, NEXT FRIENDS, AND GUARDIANS OF A.G.S., A MINOR CHILD<br><br>APPELLEES | Opinion Delivered December 8, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-15-3153]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br><br>REVERSED AND DISMISSED. |

**JOSEPHINE LINKER HART, Associate Justice**

Nathaniel Smith, M.D., M.P.H., Director of the Arkansas Department of Health (Smith), appeals from the circuit court's order granting declaratory judgment and injunctive relief to three couples, appellees Marisa N. Pavan and Terrah D. Pavan, Leigh D.W. Jacobs and Jana S. Jacobs, and Courtney M. Kassel and Kelly L. Scott. At issue is whether the disposition of this case is controlled by the doctrine of res judicata and whether two state statutes governing the issuance of birth certificates violate federal constitutional rights to equal

protection and due process under *Obergefell v. Hodges*, ___ U.S. ___, 135 S. Ct. 2584 (2015), which held that the right of same-sex couples to marry is a fundamental right inherent in the liberty of the person.

In challenging the circuit court's decision on appeal, Smith argues that the circuit court (1) erred in finding that another circuit court had previously granted injunctive relief regarding birth certificates in its orders in *Smith v. Wright*, 60CV-13-2662 (Pulaski Co. Cir. Ct. May 9, 2014 and May 15, 2014), that was later appealed to this court and dismissed by this court as moot, *Smith v. Wright*, 2015 Ark. 298 (per curiam); (2) erred in granting declaratory relief based on its conclusion that *Obergefell* had resolved issues relating to the issuance of birth certificates for the minor children of same-sex couples; (3) erred in finding a due-process violation by the Arkansas Department of Health's (ADH) refusal to issue birth certificates for minor children of married female couples showing the name of the spouse of the mother; (4) erred in finding an equal-protection violation by ADH's refusal to issue birth certificates for minor children of married female couples showing the name of the spouse of the mother; (5) erred by not applying to the facts of this case Arkansas Code Annotated section 9-10-201(a) (Repl. 2015), which addresses children born to married women by means of artificial insemination. We reverse and dismiss.

Appellees are three married female couples. The Pavans were married in New Hampshire in 2011, and the minor child was born to Terrah in Arkansas in May 2015. The child was conceived through artificial insemination involving an anonymous donor. ADH would not place Marisa's name on the minor child's birth certificate. The Jacobses were

married in Iowa in 2010, and the minor child was born to Leigh in Arkansas in June 2015, also having been conceived through artificial insemination involving an anonymous donor. ADH would not place Jana's name on the minor child's birth certificate. Courtney Kassell and Kelly Scott resided in Arkansas when the minor child was born to Courtney in Arkansas in January 2015. The conception took place through artificial insemination involving an anonymous donor. The couple married in July 2015. Both before and after their marriage, the couple sought to have Kelly's name placed on the minor child's birth certificate, but ADH denied the request.

Appellees filed suit in the circuit court, seeking a declaration that the refusal to issue birth certificates with the names of both spouses on the birth certificates of their respective minor children violated their constitutional rights to equal protection and due process. Appellees also sought to have certain statutory provisions governing the issuance of birth certificates declared unconstitutional as written. Appellees further sought to enjoin Smith from refusing to list the names of both spouses of a same-sex couple on the birth certificate of the minor child. The three couples also asked for an order requiring Smith to issue corrected birth certificates naming both spouses.

Smith answered the complaint, and both parties filed competing motions for summary judgment. At the conclusion of the hearing on the motions, the circuit court announced its intention to order Smith to amend the birth certificates of appellees' children. Smith filed a motion for stay. In a subsequent order and memorandum opinion, the motion for stay was denied. In the order and opinion, the circuit court again ordered Smith to issue three

amended birth certificates showing the names of both spouses on the birth certificates of their respective minor children.[1] The court, however, dismissed the claims made by the couples in their capacities as representatives of their respective minor children.[2]

In reaching its decision, the circuit court concluded that the circuit court in *Wright* had previously granted injunctive relief regarding birth certificates, and thus, the case was controlled by res judicata. The circuit court also declared as unconstitutional portions of Arkansas Code Annotated section 20-18-401(e), (f) (Repl. 2014), which governs entry of the name of the mother and the father of the child on birth certificates. Further, the circuit court stated that it would interpret Arkansas Code Annotated section 20-18-406(a)(2), which addresses the issuance of a new birth certificate to a "person" who has been "legitimated," in a manner that the circuit court concluded would make the statute constitutional. Smith brought this appeal from the circuit court's decision.

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *See, e.g.*,

---

[1]After the circuit court denied Smith's petition for a stay, Smith petitioned this court for an emergency stay of the circuit court's order. Because Smith indicated that he did not wish to challenge the portion of the order requiring him to provide amended birth certificates to the appellees, this court denied the petition for a stay as to the portions of the order and memorandum opinion ordering him to provide amended birth certificates to the appellees. This court granted the petition for an emergency stay as to the remainder of the order and memorandum opinion. This court also granted the motion of the American Civil Liberties Union and the Arkansas Civil Liberties Union for permission to file an amicus curiae brief.

[2]The crux of the case before us is the registration of children's births. Despite the central question of the children's rights relating to their birth certificates, this question was not argued by the parties; nor was it addressed or ruled on by the circuit court.

*Washington Cty. v. Bd. of Tr. of the Univ. of Ark.*, 2016 Ark. 34, at 3, 480 S.W.3d 173, 175. Ordinarily, upon reviewing a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *Id.*, 480 S.W.3d at 175. However, in a case where the parties agree on the facts, we determine whether the appellee was entitled to judgment as a matter of law. *Id.*, 480 S.W.3d at 175. When parties file cross-motions for summary judgment, as in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.*, 480 S.W.3d at 175. As to issues of law presented, our review is de novo. *Id.*, 480 S.W.3d at 175.

We first address Smith's argument that the circuit court erred in concluding that the disposition of this case is controlled by res judicata. In its opinion, the circuit court noted that Smith was a party in *Wright*. The circuit court further noted that the *Wright* plaintiffs filed a summary-judgment motion, requesting that the court issue a permanent mandatory injunction

> [r]equiring Defendant Nathaniel Smith, M.D., as interim director of the Arkansas Department of Health, and his successors, to henceforth issue birth certificates for children born of marriages between members of the same sex that were entered into in other states to reflect that the married parents are the parents of the children born of the marriage; and, also, requiring said Defendant to issue amended birth certificates to any married couples of the same sex that previously gave birth to children in Arkansas to reflect that the married parents are the parents of the children born of the marriage.

The circuit court further noted that in *Wright*, the final judgment of May 15, 2014, stated that

> it is and was the intent of the Order to grant Plaintiff's Motion for Summary Judgment without exception and as to all injunctive relief requested therein. In fact, this was the expressly stated title of the May 9, 2014 Order. Plaintiff's motion requested injunctive relief and properly identified the relevant laws at issue in this challenge.

The circuit court concluded that the claims brought by the Pavans and the Jacobses were fully and completely litigated in *Wright* and that the *Wright* injunction is res judicata and binding on Smith.

On appeal, Smith argues that the *Wright* court did not expressly grant injunctive relief regarding birth certificates. The parties note that the May 15, 2014 order provided

> that Plaintiff's request for a permanent injunction is GRANTED and the Court does hereby permanently enjoin all Defendants . . . from enforcing Amendment 83 to the Arkansas Constitution, Act 146 of 1997, § 1(b)–(c) (codified at Ark. Code Ann. 9-11-208(a)(1)–(2)) and Act 144 of 1997 (codified at Ark. Code Ann. §§ 9-11-107(b), -109); and all other state and local laws and regulations identified in Plaintiff's complaint or otherwise in existence to the extent they do not recognize same-sex marriages validly contracted outside Arkansas, prohibit otherwise qualified same-sex couples from marrying in Arkansas or deny same-sex married couples the rights, recognition and benefits associated with marriage in the State of Arkansas.

What is at issue here is whether the doctrine of collateral estoppel applies. Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact previously litigated by a party. *See, e.g.*, *Johnson v. Union Pac. R.R.*, 352 Ark. 534, 544, 104 S.W.3d 745, 750 (2003). The elements of collateral estoppel are that (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) it must have been determined by a valid and final judgment, and (4) the determination must have been essential to the judgment. *Id.*, 104 S.W.3d at 750.

Rule 65(d)(1) of the Arkansas Rules of Civil Procedure requires that "[e]very order granting an injunction and every restraining order must (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Thus, an injunction

order cannot refer to the complaint or any other document. *See Baptist Health v. Murphy*, 362 Ark. 506, 209 S.W.3d 360 (2005) (applying rule).

A fair reading of the *Wright* orders indicates that the orders did not address the issues presented here relating to birth certificates. In fact, birth certificates are not mentioned at all in the orders. Instead, in examining the *Wright* orders, the *Wright* court ruled on the constitutionality of amendment 83 and statutes governing marriage. We note that the circuit court, in concluding that *Wright* should be given the effect of res judicata, ruled that if the *Wright* judgment did not comply with Rule 65(d) concerning the specificity of its injunctive language, then that issue could have been raised by Smith in an appeal in *Wright*. Further, the circuit court stated that when this court dismissed the *Wright* appeal as moot, Smith had the opportunity to point out to the court that all of the issues relating to the injunction were not resolved by *Obergefell*. We hold, however, that the language in the *Wright* orders would not have placed Smith on notice that he needed to appeal those orders to this court and raise on appeal arguments related to the overbreadth of the injunctive relief granted and to the issuance of birth certificates.

In the next issue on appeal, Smith argues that the circuit court erred in granting declaratory relief based on *Obergefell*. The circuit court's opinion suggests that it based its analysis of the constitutionality of the birth-certificate statutes at issue here entirely on the holding of *Obergefell*. There are two statutes that the circuit court considered. The first, Arkansas Code Annotated section 20-18-401 provides in part as follows:

> (e) For the purposes of birth registration, the mother is deemed to be the woman who gives birth to the child, unless otherwise provided by state law or determined by a

7

SLIP OPINION

court of competent jurisdiction prior to the filing of the birth certificate. The information about the father shall be entered as provided in subsection (f) of this section.

(f)(1) If the mother was married at the time of either conception or birth or between conception and birth the name of the husband shall be entered on the certificate as the father of the child, unless:

 (A) Paternity has been determined otherwise by a court of competent jurisdiction; or

 (B) The mother executes an affidavit attesting that the husband is not the father and that the putative father is the father, and the putative father executes an affidavit attesting that he is the father and the husband executes an affidavit attesting that he is not the father. Affidavits may be joint or individual or a combination thereof, and each signature shall be individually notarized. In such event, the putative father shall be shown as the father on the certificate and the parents may give the child any surname they choose.

(2) If the mother was not married at the time of either conception or birth or between conception and birth, the name of the father shall not be entered on the certificate of birth without an affidavit of paternity signed by the mother and the person to be named as the father. The parents may give the child any surname they choose.

(3) In any case in which paternity of a child is determined by a court of competent jurisdiction, the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court.

(4) If the father is not named on the certificate of birth, no other information about the father shall be entered on the certificate.

In considering Arkansas Code Annotated section 20-18-401(e), (f), the circuit court found that the statute "intertwined the concepts of 'parent' with certain rights and presumptions occurring within a marital relationship, using now impermissible limiting spousal terms of 'husband' and 'wife.'" The circuit court concluded that "[s]uch language categorically prohibits every same-sex married couple, regardless of gender, from enjoying the same spousal benefits which are available to every opposite-sex married couple." The circuit court found that, based on *Obergefell*, the majority of subsections (e) and (f) had to be struck down as unconstitutional.

The other statute at issue, Arkansas Code Annotated section 20–18–406(a)(2), provides

in part as follows:

> (a) The State Registrar of Vital Records shall establish a new certificate of birth for a person born in this state when he or she receives the following:
>
> . . . .
>
> (2) A request that a new certificate be established and any evidence, as required by regulation, proving that the person has been legitimated, or that a court of competent jurisdiction has determined the paternity of the person or that both parents have acknowledged the paternity of the person and request that the surname be changed from that shown on the original certificate.

In considering this statute, the circuit court found that, in light of *Obergefell*,

> the phrase "person to be legitimated" is declared to include the minor children of any couple—same-sex or opposite-sex—who married subsequent to the birth of the minor child, and who present proof to the Arkansas Department of Health of the date of birth of the minor child and of the date of their marriage. In the event any biological parent is listed on a birth certificate sought to be amended, a court order shall be required before an amended certificate is issued which removes such person(s) name. In the event one or both of the spouses was married to another individual at any time from the birth of the minor child forward, no amended birth certificate shall be issued absent a court order naming the current spouses as the parents of the minor child.

We disagree with the circuit court's analysis of both statutes. *Obergefell* did not address Arkansas's statutory framework regarding birth certificates, either expressly or impliedly. Rather, the United States Supreme Court stated in *Obergefell* that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty." *Obergefell*, ___ U.S. at ___, 135 S. Ct. at 2604. The Court mentioned birth certificates only once, stating,

> Indeed, while the States are in general free to vary the benefits they confer on all married couples, they have throughout our history made marriage the basis for an expanding list of governmental rights, benefits, and responsibilities. These aspects of marital status include: taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical

decisionmaking authority; adoption rights; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; and child custody, support, and visitation rules.

*Obergefell*, ___ U.S. at ___, 135 S. Ct. at 2601. This single mention of birth certificates was related only to its observation that states conferred benefits on married couples, which in part demonstrated that " the reasons marriage is fundamental under the Constitution apply with equal force to same-sex couples." *Id*. at ___, 135 S.Ct. at 2599.

The amicus curiae brief notes that in *Obergefell*, the Court stated that it declined to "stay its hand to allow slower case-by-case determination of the required availability of specific public benefits to same sex- couples" because "it would deny gays and lesbians many rights and responsibilities intertwined with marriage." *Id*. at ___, 135 S. Ct. at 2606. We conclude below, however, that *Obergefell* does not impact these statutes governing the issuance of birth certificates and that these statutes pass constitutional muster.[3]

In interpreting the statutes, every act carries a strong presumption of constitutionality. Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and before an act will be held unconstitutional, the incompatibility between it and the constitution must be clear. *Mendoza v. WIS Int'l, Inc.*, 2016 Ark. 157, at 3, 490 S.W.3d 298, 300. When possible, we will construe a statute so that it is constitutional. *Id*., 490 S.W.3d at 300. In determining the constitutionality of a statute, we look to the rules of

---

[3]Both Chief Justice Brill and Justice Danielson misread and essentially add to the language they cite from *Obergefell* to suggest that the United States Supreme Court has ruled on the issue before us. While Justice Wood relies on *Obergefell*, she essentially acknowledges that *Obergefell* did not specifically address the issue before us.

statutory construction. *Id.*, 490 S.W.3d at 300. When construing a statute, the basic rule is to give effect to the intent of the legislature, and where the language of a statute is plain and unambiguous, we determine the legislative intent from the ordinary meaning of the language used. *Id.*, 490 S.W.3d at 300. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*, 490 S.W.3d at 300. This court reviews both the circuit court's interpretation of the constitution as well as issues of statutory interpretation de novo, because it is for this court to determine the meaning of a statute. *Brown v. State*, 2015 Ark. 16, at 6, 454 S.W.3d 226, 231.

Arkansas Code Annotated section 20-18-401(e) provides that the mother is deemed to be the woman who gives birth to the child. Subsection (f) governs who would be considered the father, providing that if the mother was married at the time of either conception or birth or between conception and birth the name of the husband shall be entered on the certificate as the father of the child. Because we determine legislative intent from the ordinary meaning of the language used, we note that "husband" is defined as "a married man." *Webster's Third New International Dictionary* 1104 (2002). "Father" is defined as "a man who has begotten a child." *Webster's Third New International Dictionary* 828 (2002). Thus, in subsection (f), "father" identifies the child's biological father, and "husband" identifies the mother's male spouse. The mother's spouse, or "husband," is entered on the certificate as the "father" of the child if the mother was married at the time of either conception or birth or between conception and birth. Subsection (f)(1), however, further provides that the name of the husband would not be entered on the certificate as the father

upon a determination of paternity by a court order or by the proper affidavits regarding the child's paternity. Thus, the statute centers on the relationship of the biological mother and the biological father to the child, not on the marital relationship of husband and wife. We see no basis for the circuit court's conclusion that the statute impermissibly "intertwined" the concepts of "parent" with the rights and presumptions of marriage by using the words "husband" and "wife." We hold that Arkansas Code Annotated section 20–18–401(e), (f) does not run afoul of *Obergefell*.

Under Arkansas Code Annotated section 20–18–406(a)(2), a new birth certificate is provided when it is proved that the "person has been legitimated." While the phrase "person has been legitimated" is not defined, we have observed that "an illegitimate child is a child who is born at the time that his parents, though alive, are not married to each other," and that "a child is considered legitimate if the parents were married at the time of its conception and before its birth, even though they were not married to each other at the time the child was born." *Willmon v. Hunter*, 297 Ark. 358, 360, 761 S.W.2d 924, 925 (1988). Thus, Arkansas Code Annotated section 20–18–406(a)(2) provides that a new birth certificate may be issued on a showing that the child's parents, who conceived the child, have married. This interpretation comports with ADH's own regulations, which provide that "[i]f the natural parents marry after the birth of a child, a new certificate of birth shall be prepared by the State Registrar for a child born in this State, upon receipt of an affidavit of paternity signed by the natural parent of said child, together with a certified copy of the parents' marriage record." Code Ark. R. 007.12.1-5.2. Thus, this statute considers the relationship of the biological

mother and the biological father to the child. Accordingly, we see no basis for the circuit court's conclusion that *Obergefell* requires this court to construe the biologically based phrase "person to be legitimated"—in a statute governing birth certificates—to include the minor children of a same-sex couple who married after the birth of the minor child. We hold that *Obergefell* did not answer the questions presented in this case regarding the constitutionality of Arkansas statutes relating to the issuance of birth certificates.

We turn to the circuit court's finding that Arkansas Code Annotated section 20-18-401(e), (f) and Arkansas Code Annotated section 20-18-406(a)(2) unconstitutionally deprive appellees of due process and equal protection. There are two primary ways to challenge the constitutionality of a statute: an as-applied challenge, in which the court assesses the merits of the challenge by considering the facts of the particular case in front of the court, not hypothetical facts in other situations, and a facial challenge, which seeks to invalidate the statute itself. *Laymon v. State*, 2015 Ark. 485, at 3, 478 S.W.3d 203, 205. A facial invalidation of a statute is appropriate if it can be shown that no set of circumstances exists under which the statute would be valid. *Martin v. Kohls*, 2014 Ark. 427, at 11, 444 S.W.3d 844, 850. We conclude that because the couples received the relief they requested and because that relief is not challenged on appeal—the issuance of birth certificates naming both spouses on the birth certificate—we do not have before us an as-applied challenge. Though the circuit court did not describe the challenge presented by the appellees, we conclude that their challenge was a facial challenge.

In our analysis of the statutes presented above, it is the nexus of the biological mother

13

SLIP OPINION

and the biological father of the child that is to be truthfully recorded on the child's birth certificate. That truthful information is required in the application for an initial or amended birth certificate is evidenced by Arkansas Code Annotated section 20–18–105(a)(1), which allows a person to be punished by a $10,000 fine and five years' imprisonment for knowingly making a false statement in a vital record. Our conclusion is supported by the only evidence presented in the record, the affidavit of Melinda Allen, ADH's Vital Records State Registrar. Allen averred that, in that capacity, she supervised the issuance and maintenance of birth certificates. She further averred as follows:

> The overarching purpose of the vital records system is to ensure that vital records, including birth certificates as well as death certificates and marriage certificates, are accurate regarding the vital events that they reflect. The accuracy of the records allows ADH to compile, maintain, and analyze vital statistics. ADH had a legitimate interest in maintaining reliable and comprehensive statistics of all vital events for purposes of public health research and identification of public health trends.
>
> Identification of biological parents through birth records is critical to ADH's identification of public health trends, and it can be critical to an individual's identification of personal health issues and genetic conditions. Even in the case of surrogacy where the biological mother is never intended to be the legal parent of a child, the statutes provide that an initial birth certificate is issued reflecting the biological mother as a parent, and then an amended birth certificate is issued reflecting the intended parent(s) as legal parent(s). The original birth certificates is sealed, but maintained by ADH. In cases, of adoption, ADH also maintains sealed copies of original birth certificates reflecting biological parentage. This is important because a child may need to access information about biological parentage for health–related reasons. The State has a legitimate interest in maintaining such information (even if under seal and releasable only pursuant to a court order) in order to protect the future health of the child.

We now consider appellees' due process challenge to Arkansas Code Annotated section 20–18–401(e), (f) and Arkansas Code Annotated section 20–18–406(a)(2). On the question of due process, the United States Supreme Court has stated,

SLIP OPINION

Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. In addition these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs.

The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution. That responsibility, however, "has not been reduced to any formula." Rather, it requires courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect.

*Obergefell*, ___ U.S. at ___, 135 S. Ct. at 2597–98 (internal citations omitted).

As stated in the court's order, the examples provided by appellees of how the failure to include both same-sex spouses on birth certificates or amended birth certificates may adversely affect their legal status regarding the minor children included

identification procedures for Social Security numbers and passports, denial of the right to authorize medical care for the minor, denial of the right to authorize school related activities, denial of the right to apply for needed governmental or employment related benefits, denial of survivor benefits in the case of death of one of the spouses, denial to the child of inheritance rights, disruption of the parent-child relationship in the event of divorce of the same-sex couple, and the award of child support in the event of divorce of a same-sex couple.

In its ruling, however, the circuit court stated that its order "does not legally resolve any of those potential issues." Furthermore, appellees did not present evidence, or even statutory authority, to support their assertion that any of these issues are answered by who is listed as the mother and the father on a birth certificate.

As noted above, the *Obergefell* Court held that the right of same-sex couples to marry is a fundamental right inherent in the liberty of the person under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Obergefell*, ___ U.S. at ___, 135 S. Ct. at

SLIP OPINION

2604. The Court has further stated that "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

In finding a due-process violation, however, the circuit court has conflated distinct categories of marriage, parental rights, and vital records. The question presented in this case does not concern either the right to same-sex marriage or the recognition of that marriage, or the right of a female same-sex spouse to be a parent to the child who was born to her spouse. What is before this court is the narrow issue of whether the birth-certificate statutes as written deny the appellees due process. The purpose of the statutes is to truthfully record the nexus of the biological mother and the biological father to the child. On the record presented, we cannot say that naming the nonbiological spouse on the birth certificate of the child is an interest of the person so fundamental that the State must accord the interest its respect under either statute.

As for appellees' equal-protection challenge to Arkansas Code Annotated section 20-18-401(e), (f) and Arkansas Code Annotated section 20-18-406(a)(2), we have observed here that under these statutes, the birth certificate evidences biological relationships. Appellees contend that the statutes result in disparate treatment by permitting male spouses of female mothers to be listed as fathers, even though the male spouse may not be the child's biological father. We observe, however, that under Arkansas Code Annotated section 20-18-401(f), the husband's designation as father may be refuted, which evidences that the biological

connection is what the birth certificate intends to record. Moreover, our statutes penalize anyone who knowingly makes a false statement in a vital record. Ark. Code Ann. § 20-18-105(a)(1). In the situation involving the female spouse of a biological mother, the female spouse does not have the same biological nexus to the child that the biological mother or the biological father has. It does not violate equal protection to acknowledge basic biological truths. As has been noted,

> [t]o fail to acknowledge even our most basic biological differences—such as the fact that a mother must be present at birth but the father need not be—risks making the guarantee of equal protection superficial, and so disserving it. Mechanistic classification of all our differences as stereotypes would operate to obscure those misconceptions and prejudices that are real. The distinction embodied in the statutory scheme here at issue is not marked by misconception and prejudice, nor does it show disrespect for either class. The difference between men and women in relation to the birth process is a real one, and the principle of equal protection does not forbid Congress to address the problem at hand in a manner specific to each gender.

*Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001).

Nevertheless, in considering an equal-protection claim, and in considering a heightened standard to withstand equal-protection scrutiny, it must be established at least that the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives. *Id.*, 533 U.S. at 60.

We conclude that the evidence presented by Smith—the affidavit of the vital records state registrar—established that the challenged classification serves an important governmental objective—tracing public-health trends and providing critical assistance to an individual's identification of personal health issues and genetic conditions—and that the means

employed—requiring the mother and father on the birth certificate to be biologically related to the child—are substantially related to the achievement of those objectives.

Finally, in his brief and during oral argument to this court, Smith cited Arkansas Code Annotated section 9-10-201(a), which provides that "[a]ny child born to a married woman by means of artificial insemination shall be deemed the legitimate natural child of the woman and the woman's husband if the husband consents in writing to the artificial insemination." In oral argument, Smith conceded that this statute is constitutionally infirm and suggests that if this court were to review this statute on appeal, the court could resolve many of the concerns raised by the appellees by amending the wording of the statute. However, this court is not a legislative body, and it cannot change the wording of the statute. The legislative branch of the state government has the power and responsibility to proclaim the law through statutory enactments, and the judicial branch has the power and responsibility to interpret the legislative enactments. *Fed. Express Corp. v. Skelton*, 265 Ark. 187, 197–98, 578 S.W.2d 1, 7 (1979). Furthermore, the circuit court did not rule on the constitutionality of this statute. Thus, Smith has failed to preserve this issue for appeal. *See, e.g.*, *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, at 12, 427 S.W.3d 651, 658. We decline to address Smith's argument.[4]

---

[4]Chief Justice Brill's extended discussion of the statute is purely advisory in nature. As this court has said on numerous occasions, we neither answer academic questions nor issue advisory opinions. *See, e.g.*, *Hampton v. State*, 2014 Ark. 303, at 7, 437 S.W.3d 689, 693. The State suggested that we rewrite this same statute to address an issue that was never ruled on by the circuit court. Consistently with our longstanding practices and jurisprudence, we decline to do so. We further note that neither the Solicitor General in his oral argument nor Chief Justice Brill in his opinion has addressed the right of a child to knowledge of his or her biological parentage and the right of the child to a birth certificate issued by ADH that truthfully sets out his or her lineage.

Because we conclude that the circuit court erred in finding that the case was controlled by *Wright*, and because we conclude that the circuit court erred in finding that Arkansas Code Annotated section 20-18-401(e), (f) and Arkansas Code Annotated section 20-18-406(a)(2) facially violated the appellees' rights to due process and equal protection, we reverse and dismiss.[5]

On a collateral matter, in *Smith v. Pavan*, 2015 Ark. 474 (per curiam), this court granted in part and denied in part Smith's petition for an emergency stay pending appeal. This court also observed that the circuit court's order contained "inappropriate remarks," and we stated our intent to address the remarks following our receipt of the entire record on appeal. The gist of Judge Fox's remarks was that if this court granted the stay, then it would deprive persons of their constitutional rights, and that this court previously had deprived people of their constitutional rights in a separate matter. We remind Judge Fox that, in accordance with

---

[5]Justice Wood contends that this court should reverse and vacate the circuit court's order to conduct a full evidentiary hearing in light of concessions made by the State. The parties, however, have not requested such relief. The parties consider the case fully litigated and ready for a determination concerning whether the circuit court committed trial error. It would be inappropriate for this court to reverse and remand a case for retrial—not because the circuit court committed trial error—but because this court wants the parties to present more evidence and raise more issues. This court has repeatedly stated that matters outside of the record will not be considered on appeal. *See, e.g.*, *McDermott v. Sharp*, 371 Ark. 462, 465, 267 S.W.3d 582, 585 (2007). Justice Wood further suggests that this court might stay its hand and remand to allow action by the General Assembly. However, there is nothing in the record to suggest that the General Assembly will pass laws that will address issuance of birth certificates. Morever, staying a case to await action by the General Assembly is unlike circumstances where we stay an appeal pending the disposition of another case that is on appeal in federal court that addresses the same issues. *See Unborn Child Amendment Comm. v. Ward*, 318 Ark. 165, 883 S.W.2d 817 (1994) (staying appeal of a circuit-court order after recognizing that, until such time as the federal court's decision is reversed by the appropriate appellate court, the permanent injunction issued by the federal district court will be binding on the State of Arkansas and its instrumentalities).

the Arkansas Code of Judicial Conduct, all courts take great care to "uphold and apply the law" and "perform all duties of judicial office fairly and impartially." Ark. Code Jud. Conduct R. 2.2. All courts intend to faithfully apply both federal and state constitutional law in a manner that does not result in the deprivation of constitutional rights. We remind Judge Fox that this same code requires a judge to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Ark. Code Jud. Conduct R. 1.2. A remark made to gain the attention of the press and to create public clamor undermines "public confidence in the independence, integrity, and impartiality," not only of this court, but also of the entire judiciary. Judge Timothy Davis Fox is hereby admonished for his inappropriate comments made while performing the duties of his judicial office.[6]

Reversed and dismissed.

BRILL, C.J., and WOOD, J., concur in part and dissent in part.

DANIELSON, J., dissents.

---

[6]Citing several cases, Justice Danielson asserts that this court should not caution Judge Fox for his inappropriate comments made while performing the duties of his judicial office. These cases, however, are wholly inapposite to the present situation; they do not involve the cautioning of a trial judge for comments made while performing judicial duties, but rather concern criminal or contempt proceedings against laymen. When one rules as a judge, he is governed by ethical considerations and restrictions not required or even expected of laymen. Experience has established that the public will benefit if the judge obeys them. The question presented is whether a circuit judge may indulge in unfounded and intemperate criticism or abuse of the courts while on the bench.

**HOWARD W. BRILL, Chief Justice, concurring in part and dissenting in part.**

Come gather 'round people
Wherever you roam
And admit that the waters
Around you have grown
And accept it that soon
You'll be drenched to the bone
If your time to you is worth savin'
Then you better start swimmin' or you'll sink like a stone
For the times they are a-changin'

. . . .

Come senators, congressmen
Please heed the call
Don't stand in the doorway
Don't block up the hall
For he that gets hurt
Will be he who has stalled
There's a battle outside and it is ragin'

Bob Dylan[1]

The Supreme Court of the United States has held that state bans on same-sex marriage violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. *Obergefell v. Hodges*, 576 U.S. ___, 135 S. Ct. 2584 (2015). *See also* Ark. Const. art. II, § 3 ("The equality of all persons before the law is recognized."). The six plaintiffs in this case have sought judicial relief to obtain birth certificates for their children. It is true that "individuals need not await legislative action

---

[1] Bob Dylan, *The Times They Are A-Changin' on The Times They Are A-Changin'* (Columbia Records 1964). The Nobel Prize in Literature was awarded to Bob Dylan "for having created new poetic expressions within the great American song tradition." Press Release-The Nobel Prize in Literature 2016 (Oct. 13, 2016), <https://nobelprize.org/nobel prizes/literature/laureates/2016/press/html>

before asserting a fundamental right." *Obergefell*, 576 U.S. at ___, 135 S. Ct. at 2605. But our tripartite system of government rests on the premise that the three branches not only have separate powers, but also have unique powers and responsibilities and capabilities. I write this opinion, concurring in part and dissenting in part, to highlight the roles of all three branches. I would affirm in part the ruling of the circuit court, and I would reverse in part the ruling of the circuit court.

## I. *The Effect of Obergefell*

The holding in *Obergefell* is narrow: The Supreme Court declared same-sex marriage legal in all fifty states. The question here is the broader impact of that ruling as it affects birth certificates. In its list of aspects of marital status, the Court mentioned "birth certificates." The present case asks whether a married same-sex couple is entitled to a birth certificate for a child born to one of the married individuals. The logical extension of *Obergefell*, mandated by the Due Process Clause and the Equal Protection Clause, is that a same-sex married couple is entitled to a birth certificate on the same basis as an opposite-sex married couple. As the Court stated in *Obergefell*, same-sex couples may not be denied "the constellation of benefits that the States have linked to marriage." 576 U.S. at ___, 135 S. Ct. at 2601. The right to a birth certificate is a corollary to the right to a marriage license. I analyze the circuit court's ruling, and the issues presented, in light of three scenarios.

### A. Scenario One

Two married couples wish to be parents. Unable to conceive naturally, they use an anonymous donor's sperm for artificial insemination. In each couple, the woman gives

birth to a child.

The first couple is a man and a woman. Arkansas Code Annotated section 9-10-201(a) (Repl. 2015) "deems" the husband to be the father of the child, provided that he has consented in writing to the artificial insemination. The donor has no legal responsibility or rights to the child. The birth certificate will name the woman and her husband as the parents of the child.

The second couple is a woman and a woman. But the language of the statute says "husband."  At oral argument, the State of Arkansas conceded, properly so, that, pursuant to the Court's holding in *Obergefell*, the second couple is entitled to a birth certificate listing both women as parents. The State suggested that this court simply substitute the word "spouse" for "husband" in section 9–10-201(a). This statutory provision was not fully litigated below and was not ruled on by the circuit court. Without engaging in that statutory legerdemain, the circuit court granted the relief in decreeing the issuance of birth certificates to the two married same-sex couples. In light of *Obergefell*, this court should affirm that result. Accordingly, I dissent from that part of the majority opinion denying relief.[2] I would remand this part of the circuit court's order for appropriate action.

## B. Scenario Two

Two unmarried couples wish to be parents. Unable to conceive naturally, they use the sperm of an anonymous donor for artificial insemination. In each instance, the woman gives birth to a child. The first couple is a man and woman.  The second couple is a woman and a woman.

---

[2] Although I find some of Judge Fox's comments inappropriate, I dissent from the majority's decision to admonish him.

SLIP OPINION

After the child is born to the woman, the couple marries and seeks a birth certificate with both names. Neither couple may use section 9–10–201(a), which is limited to couples married at the time of the artificial insemination. How is the other individual to be added to the birth certificate as a parent? How do these couples obtain a birth certificate? After *Obergefell*, may the burden on the same-sex couple be greater than the burden on the opposite-sex couple?

Arkansas Code Annotated section 20-18-406(a)(2) (Repl. 2014) states that a new birth certificate will be issued when there is "any evidence, as required by regulation, proving that the person has been legitimated, or that a court of competent jurisdiction has determined the paternity of the person or that both parents have acknowledged the paternity of the person." Although the application of this provision may be obvious in the case of an opposite-sex couple, it is not obvious in the case of a same-sex couple. What is the "evidence, as required by regulation"? What is the meaning of "the person has been legitimated"? What is the "paternity of the person"?

I concur with the majority's decision that the circuit court exceeded its authority in giving a court-ordered definition of the phrase "person has been legitimated" in Arkansas Code Annotated section 20-18-406. In addition, the circuit court's striking subsections (e) and (f) of Arkansas Code Annotated section 20-18-401 may have unforeseen consequences or an impact on parents going far beyond those in this litigation. The circuit court had no basis to award this particular relief to the unmarried couple who had a child and subsequently married. Legislative and executive actions are necessary to provide what *Obergefell* requires.

The need for legislative and executive action is demonstrated by consideration of an affidavit submitted by the State in its motion for summary judgment. Melinda Allen, the Vital Records State Registrar for the Arkansas Department of Health, stated, in relevant part,

> If an Arkansas hospital where a woman gives birth to a child submits documentation to ADH reflecting both the woman and her spouse or another person as parents of the child, ADH issues an original birth certificate reflecting both the woman and her spouse or other indicated person as parents of the child. . . . ADH processes all original birth certificates of children born in Arkansas hospitals based upon information submitted by the hospitals without regard to the sexual orientation, gender, or marital status of the woman giving birth to the child, and without regard to the sexual orientation, gender, or marital status of any other parent of the child.

The affidavit of Melinda Allen also states,

> ADH amends birth certificates to add a parent if presented with a court order determining parentage or otherwise granting parental rights to an intended parent, or approving adoption by an intended parent, or otherwise instructing ADH to amend a birth certificate to add an intended parent. ADH processes such amendments without regard to the sexual orientation, general, marital status, or any other characteristic of any parent or intended parent of a child.

The circuit court appears to have relied on Allen's affidavit that the unmarried, same-sex couple was nevertheless entitled to a birth certificate at the time of the child's birth. However, that affidavit, and the practice that it proclaims, may be inconsistent with the existing Arkansas statutes. For instance, the affidavit speaks of the "intended parent," a phrase not found in that statutory provision. I can only repeat the point made above that legislative and executive actions are needed to effect appropriate and required changes.

C. Scenario Three

Two married couples, one opposite-sex and one same-sex, wish to be parents. In the case of each couple, none of the spouses could give birth. If a child becomes available to the couples, the statutory mechanism for parenthood is adoption. *See* Ark. Code Ann. §§ 9-9-201 et seq. Under the rationale of *Obergefell*, both married couples are to be treated equally. The law is now gender-neutral: each couple may now seek adoption under the statutory standards and obtain a birth certificate.

II. *Conclusion*

These scenarios are a mere preview of the variations that may be presented by the changes in society and the changes in reproductive methods. Regardless of personal values and regardless of a belief that the United States Supreme Court may have wrongfully decided a legal issue, all are bound by the law of the land.[3] *See* U.S. Const. art. VI, cl. 2. The oath taken by state judges, legislators, and executive officers is to uphold the Constitution of the United States and the Constitution of the State of Arkansas. This court has no power to order the legislature to make statutory changes or the executive branch to alter regulations.[4]

---

[3] Following the *Obergefell* decision, Governor Asa Hutchinson issued the following statement: "While my personal convictions will not change, as Governor I recognize the responsibility of the state to follow the direction of the U.S. Supreme Court. As a result of this ruling, I will direct all state agencies to comply with the decision. . . ." Press Release of June 26, 2015.

[4] *See Marie v. Mosier*, ___ F. Supp. 3d ___, 2016 WL 3951744 (D. Kan. July 22, 2016) (issuing an injunction against state defendants to comply with the broad holding of *Obergefell* and stating that the court "cannot assign plaintiffs' constitutional rights to . . . uncertainty . . . [of] defendants' assurances of future compliance); *Henderson v. Adams*, ___ F. Supp. 3d ___, 2016 WL 3548645 (S.D. Ind. June 30, 2016) (holding that statutory scheme violated same-sex parents' rights to equal protection); *Brenner v. Scott*, 2016 WL 3561754 (N.D. Fla. Mar. 30,

The three branches of our government protect the constitutional rights of its citizens. In *Federal Express Corporation v. Skelton*, 265 Ark. 187, 197, 578 S.W.2d 1, 7 (1979), this court aptly stated,

> Our government is composed of three separate independent branches: legislative, executive and judicial. Each branch has certain specified powers delegated to it. The legislative branch of the State government has the power and responsibility to proclaim the law through statutory enactments. The judicial branch has the power and responsibility to interpret the legislative enactments. The executive branch has the power and responsibility to enforce the laws as enacted and interpreted by the other two branches.

The times indeed are a-changin'. All three branches of the government must change accordingly. It is time to heed the call.

**RHONDA K. WOOD, Justice, concurring in part and dissenting in part.** The fluid nature of everyone's reaction to the same-sex marriage decision and the State's understandably evolving response to it requires this court to reverse, vacate, and remand the portion of the circuit court's order regarding the facial and as-applied constitutional challenges to Ark. Code Ann. §§ 20-19-401 and 406. Under the prudential-mootness doctrine, which I encourage this court to adopt, a court may withhold relief based on "considerations of prudence and comity for coordinate branches of government [that] counsel the court to stay its hand, and to withhold relief it has the power to grant." *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (citing *Chamber of Commerce v. United States Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)).

In simple terms, this case is fluctuating and underdeveloped. In addition, and

---

2016) ("That the Legislature chose not to pass legislation to bring Florida['s birth certificate statute] into compliance [with the ruling in *Obergefell*] does not help [state officials].").

contrary to the majority's view, I believe states must comprehensively review their laws so that married same-sex couples and opposite-sex couples receive the same benefits of marriage in light of the United States Supreme Court's decision in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). I encourage the legislature to address the relevant birth-certificate statutes in the upcoming session to avoid a plethora of litigation and confusion for the courts. After all, these decisions are matters of policy that are best made by the legislative branch, which has the exclusive authority to determine public policy. *State Farm Mut. Auto. Ins. Co. v. Henderson*, 356 Ark. 335, 342, 150 S.W.3d 276, 280 (2004).

The federal court's prudential-mootness doctrine should be adopted and applied to this case. This doctrine has "particular applicability in cases . . . where the relief sought is an injunction against the government." *S. Utah Wilderness All.*, 110 F.3d at 727. The key consideration is whether "circumstances changed since the beginning of litigation that forestall any occasions for meaningful relief." *Id*. Two key circumstances have developed since this litigation started. First, plaintiffs received relief in that the State has issued the appropriate birth certificates to them. Second, the State concedes that the relevant statutes involving determination of parentage must comply with *Obergefell*, including the statute governing the status of people born via artificial insemination. These developments render the majority's decision provisional.

The provisional nature of this case is enhanced by its procedural posture. The parties filed cross-motions for summary judgment. When summary judgment is sought, the circuit court must decide if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law." Ark. R. Civ. P. 56(c) (2016). But this does not mean that the mere existence of cross-motions for summary judgment implies there are no genuine issues of material fact. "The fact that both parties simultaneously are arguing that there is no genuine dispute of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." Charles A. Wright, Arthur Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2720, 327–28 (3d ed. 1998) (explaining in terms of the federal rules). In other words, when two parties file cross-motions, there may still be undisputed or unresolved facts. The parties in those cases are only "contending for the purpose of his own motion that there is no material issue of fact in the case." *Wood v. Lathrop*, 249 Ark. 376, 379, 459 S.W.2d 808, 809 (1970). Thus, even with the parties' stipulation, the court must still determine whether the material facts needed to prove the allegation are indeed present and undisputed.

The difficulty on appeal is much has changed: both parties concede that material facts have changed; the State's application of Arkansas' statutes has changed; and the State's interpretation of *Obergefell* has changed. First, according to the affidavit of the State Registrar of Vital Records, the Department of Health will issue birth certificates listing both same-sex parents if the hospital submits documentation reflecting that fact. However, the parties disputed at oral argument how the department's decision is actually being applied. There are no facts in the record to resolve this dispute. Moreover, the State has now conceded that children born of artificial insemination should have both parents deemed the natural parents, whether same-sex or opposite sex, under Ark. Code Ann. § 9-

10-201 (Repl. 2015) and asserts that it will place both same-sex parents on the birth certificate under the State's new interpretation of this statute. This statute provides that "[a]ny child born to a married women by means of artificial insemination shall be deemed the legitimate natural child of the women and the women's husband [read spouse] if the [spouse] consents in writing to the artificial insemination." Ark. Code Ann. § 9-10-201(a). It is likely, therefore, that a same-sex couple will now have both spouses' names listed on the original birth certificate without a court order, so long as the child was conceived via artificial insemination, the same-sex marriage occurred prior to the insemination, and the non-biological parent consented to the insemination. Appellants and appellees both conceded at oral argument this would resolve the challenge by two of the three same-sex marriage couples. Thus, any legal challenge in this regard could be moot if the trial court finds that the facts are as presented at oral argument.

The case thus shifts to whether section 20-18-406, which provides for the issuance of new birth certificates, is constitutional. This statute allows the registrar to issue a new certificate upon "any evidence, as required by regulation, proving that the person has been legitimated." Ark. Code Ann. § 20-18-406(a)(2) (Repl. 2014). The department currently has a regulation that provides for legitimation upon "an affidavit of paternity signed by the natural parent of said child, together with a certificate copy of the parents' marriage record." Ark. Admin. Code § 007.12.1-5.2. The State claims that the affidavit of paternity requires the parent to swear to *biological* parentage. Thus, it maintains, the regulation survives an equal-protection challenge because it discriminates on biology rather than sexual orientation. However, because the circuit court did not have this affidavit before it,

neither it nor this court can consider whether the State's contention is sufficient to survive rational-basis review. In other words, the both parties failed to prove entitlement to summary judgment regarding this statute because this critical material fact is still in dispute.

This court considers only the record before us and the arguments presented to the trial court. *E.g.*, *Dodge v. Lee*, 352 Ark. 235, 236–37, 100 S.W.3d 707, 709 (2003) (noting the well-settled "rule that matters outside the record will not be considered on appeal"). Clearly, this fluid situation has caused the facts to change from when the circuit court granted summary judgment until now. It is doubtful whether the material statements made by the registrar in her affidavit, though correct at the time, still exist today. Nor had the State conceded below, as it has done on appeal, that some of the plaintiffs were entitled to relief under another statute. We should apply the prudential-mootness doctrine, refrain from addressing the constitutional challenges, and remand for the circuit court to consider the case in light of the now-disputed facts and the State's concession. We will not be the only court to have done so on birth-certificate issues arising from *Obergefell*. *See Marie v. Mosier*, ___ F. Supp. 3d ___, 2016 WL 3951744 (D. Kansas Jul. 22, 2016).

A remand to the circuit court would also give the legislature time in the upcoming session to amend the birth-certificate statutes to comply with *Obergefell*. In fact, the State argued that the legislature is the proper forum to address this issue. I also depart from the majority regarding its interpretation of *Obergefell*. There, the Court concluded that state-law bans on same-sex marriage violated the equal-protection clause of the Fourteenth Amendment. In addition to this, the Court concluded that same-sex marriage bans also violated the Due Process Clause. 135 S. Ct. at 2604. But focusing on equal protection, the

Court held that "same-sex couples may exercise the fundamental right to marry." *Id*. at 2604–05. And earlier in the opinion, the Court noted that "birth and death certificates" were "aspects of marital status." *Id*. at 2601. Thus, in my view, states cannot constitutionally deny same-sex couples the benefits to marital status, which include equal access to birth certificates. To bring our state laws in compliance with *Obergefell*, the legislature may choose to either amend the statute to apply neutrally to same-sex marriages or base the benefit on something other than marital status. For these reasons, I cannot join the majority opinion.

Last, I have not participated in the majority's decision to admonish the circuit court.

**PAUL E. DANIELSON, Justice, dissenting.** I disagree with the majority's holdings. I would affirm the circuit court's order because the result reached therein was compelled by both the Pulaski County Circuit Court's orders in *Wright v. Smith*, 60CV-13-2662, *appeal dismissed sub nom. Smith v. Wright*, 2015 Ark. 298 (per curiam), and by the United States Supreme Court's decision in *Obergefell v. Hodges*, ___ U.S. ___, 135 S. Ct. 2584 (2015).

First, the Pulaski County Circuit Court in *Wright* entered a permanent injunction enjoining all defendants in that case, which included Smith, from enforcing any state or local laws or regulations that denied same-sex married couples "the rights, recognition and benefits associated with marriage in the State of Arkansas." *Wright v. Smith*, 60CV-13-2662 (Pulaski Cty. Cir. Ct. May 15, 2014). In fact, the circuit court explicitly granted "all" of the injunctive relief requested by the plaintiffs in *Wright*, including requiring Smith

and his successors in office to issue birth certificates for children born to same-sex marriages reflecting both names of the married parents. *See id.* The majority's statement that the *Wright* injunction had nothing to do with birth certificates is simply and demonstrably wrong. And because this court dismissed as moot the appeal in *Smith v. Wright*, 2015 Ark. 298, the injunction stands to this day. This issue was actually litigated in *Wright* and was determined by a valid and final judgment; accordingly, relitigation of the same issue in the instant case is barred by collateral estoppel, the issue-preclusion facet of res judicata. *See, e.g., Graham v. Cawthorn*, 2013 Ark. 160, 427 S.W.3d 34.

I note Smith's argument that the *Wright* injunction failed to meet the specificity requirement of Arkansas Rule of Civil Procedure 65(d) and (e) (2016). However, as the circuit court pointed out, that argument is a collateral attack on the judgment. *See Rose v. Harbor E., Inc.*, 2013 Ark. 496, 430 S.W.3d 773 (citing *Hooper v. Wist*, 138 Ark. 289, 211 S.W. 143 (1919)) (stating that a collateral attack upon a judgment has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeal, and except suits brought to obtain decrees declaring judgments to be void ab initio). Judgments may not be collaterally attacked unless the judgment is void on the face of the record or the issuing court did not have proper jurisdiction. *See id.* Smith's remedy for any purported failure of specificity in the *Wright* orders was an appeal.

Second, the United States Supreme Court held in *Obergefell* that states are not free to deny same-sex couples "the constellation of benefits that the States have linked to marriage." ___ U.S. at ___, 135 S. Ct. at 2601. Importantly, the Court listed "birth and

death certificates" specifically as one of those benefits attached to marital status. *Id*. Thus, the majority is clearly wrong in holding that *Obergefell* has no application here. Indeed, one of the cases on review in *Obergefell*, *Tanco v. Haslam*, 7 F. Supp. 3d 759 (M.D. Tenn. 2014), *rev'd sub nom. DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), involved a same-sex married couple who challenged the Tennessee law providing that their child's nonbiological parent would not be recognized as the child's parent, which affected various legal rights that included the child's right to Social Security survivor benefits, the nonbiological parent's right to hospital visitation, and the nonbiological parent's right to make medical decisions for the child.

Furthermore, one of the four principles discussed by the Court in *Obergefell*, for purposes of demonstrating that the reasons marriage is fundamental under the Constitution apply with equal force to same-sex couples, is that the right to marry "safeguards children and families and thus draws meaning from related rights of childrearing, procreation, and education." ___ U.S. at ___, 135 S. Ct. at 2600. The opinion makes clear that the protection of children and the stability of the family unit was a foundation for the Court's decision:

> Under the laws of the several States, some of marriage's protections for children and families are material. But marriage also confers more profound benefits. By giving recognition and legal structure to their parents' relationship, marriage allows children "to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." Marriage also affords the permanency and stability important to children's best interests. . . .
>
>      . . . .
>
> Excluding same-sex couples from marriage thus conflicts with a central premise of the right to marry. Without the recognition, stability, and predictability

marriage offers, their children suffer the stigma of knowing their families are somehow lesser. They also suffer the significant material costs of being raised by unmarried parents, relegated through no fault of their own to a more difficult and uncertain family life. The marriage laws at issue here thus harm and humiliate the children of same-sex couples.

*Obergefell*, ___ U.S. at ___, 135 S. Ct. at 2600–01 (internal citations omitted).

The majority errs in suggesting that the right to be named as a parent on a birth certificate is not a benefit associated with marriage and likewise errs in holding that the specific statutes at issue here focus on biological relationships rather than marital ones. Arkansas Code Annotated section 20-18-401(f) (Repl. 2014) provides that the name of the "husband" of the mother shall be entered on a birth certificate as the father of the child, without regard to any biological relationship and on the sole basis of his marriage to the mother—specifically, if he is married to the mother at the time of either conception or birth or between conception and birth. The obvious reason for this is to legitimate children whenever possible, even when biological ties do not exist. Thus, there can be no reasonable dispute that the inclusion of a parent's name on a child's birth certificate is a benefit associated with and flowing from marriage. *Obergefell* requires that this benefit be accorded to same-sex spouses and opposite-sex spouses with equal force.

Additionally, I dissent from the majority's decision to admonish the circuit judge for his critical comments. As the Supreme Court of the United States has recognized, a major purpose of the First Amendment is to "protect the free discussion of governmental affairs." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838 (1978) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). This includes discussion of "[t]he operations of the courts and the judicial conduct of judges," which are "matters of utmost public concern."

*Id.* at 839. Injury to official reputation is an insufficient reason for repressing speech that is otherwise free, and speech cannot be punished when the purpose is simply "to protect the court as a mystical entity or the judges as individuals or as anointed priests set apart from the community and spared the criticism to which in a democracy other public servants are exposed." *Id.* at 842 (quoting *Bridges v. California*, 314 U.S. 252, 292 (1941) (Frankfurter, J., dissenting)). In the words of Justice Frankfurter,

> Judges as persons, or courts as institutions, are entitled to no greater immunity from criticism than other persons or institutions. Just because the holders of judicial office are identified with the interests of justice they may forget their common human frailties and fallibilities. There have sometimes been martinets upon the bench as there have also been pompous wielders of authority who have used the paraphernalia of power in support of what they called their dignity. Therefore judges must be kept mindful of their limitations and of their ultimate public responsibility by a vigorous stream of criticism expressed with candor however blunt.

*Bridges*, 314 U.S. at 289 (Frankfurter, J., dissenting).

Moreover, the Court has cautioned against repressing speech under the guise of promoting public confidence in the integrity of the judiciary:

> The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.

*Bridges*, 314 U.S. at 270–71 (footnote omitted). In short, the fact that members of this court have personally taken offense to the circuit judge's remarks is not a sufficient basis for suggesting that those remarks violate our disciplinary rules.

For these reasons, I dissent.

*Leslie Rutledge*, Att'y Gen., by: *Colin R. Jorgensen*, Ass't Att'y Gen., for appellant.

*Cheryl K. Maples*, for appellees.

*Holly Dickson*, The Arkansas Civil Liberties Union Foundation, Inc.; and *Leslie Cooper*, The American Civil Liberties Union Foundation, Inc., amici curiae for appellees.